**Conclusion**

Around 3:00 p.m. on April 5, 2010, an explosion occurred at the Upper Big Branch Mine and took the lives of 29 miners.  Any loss of innocent life of this magnitude is a tragedy. But making this event even more tragic is the fact that it most likely could have been prevented.

We had the opportunity to watch the mine rescue teams and MSHA personnel coordinating the response and searching for survivors.  We had the honor of meeting with the families of the miners as they waited for news about their loved ones.  They showed an unbelievable level of composure even when they knew they were facing difficult odds.

We know the kinds of events that lead to explosions in coal mines, and in the Twenty-First Century, we know the actions that can be taken to prevent them.  There are specific techniques that a mine operator can employ to reduce the levels of combustible materials such as methane and coal dust.  But equally important is an operator's commitment to a culture of safety centered on protecting the health and safety of his or her workers, rather than simply avoiding a citation or a fine.

MSHA has assembled a dedicated team of professional investigators that will look into every aspect of this accident.  During our investigation, we will honor your commitment to transparency and openness, and we will make the results of our investigation fully public at its conclusion. At that time, Mr. President, we will present you, the Congress, the families, and the American people with a formal report on our findings.

We are proud of the work the MSHA inspectors do every day above and below the ground.  We take every incident that results in injury or loss of life seriously and personally.  But due to the limits of the current authority given to MSHA, and the lengths some companies will go to avoid compliance, we think it necessary to examine the statutes, regulations and policies on the books and ask ourselves if there is more we can do to ensure the health and safety of America's miners.  These men and women work hard every day to ensure that we have the electricity we need to light our homes, power our industries, and ensure our national security.  We owe it to them to do everything we can to make sure that every miner – and every worker -- comes home safely at the end of every shift.

APPENDIX A

## Fatalities by Controlling Coal Company, 01/01/2000 --- 04/10/2010[1]

| Controller Name | Total | Underground Fatalities | Surface Fatalities | Annual Underground Coal Production (avg. annual tons) | No. of Underground Employees (annual avg.) | Reported Hours Worked Underground (annual avg.) | No. of Total Employees (annual avg.) |
|---|---|---|---|---|---|---|---|
| **Massey Energy Company** | **53** | **43** | **10** | 24,229,611 | 2,930 | 6,609,663 | 5,132 |
| CONSOL Energy Inc | 26 | 17 | 9 | 55,748,189 | 4,840 | 11,112,101 | 6,081 |
| Walter Energy Incorporated | 21 | 18 | 3 | 6,047,502 | 1,239 | 2,805,433 | 1,482 |
| International Coal Group Inc (ICG) | 19 | 14 | 5 | 5,686,800 | 858 | 1,755,772 | 1,977 |
| Alliance Resource Partners LP | 17 | 10 | 7 | 20,575,983 | 1,932 | 4,777,971 | 2,124 |
| Alpha Natural Resources LLC | 16 | 10 | 6 | 30,079,408 | 3,638 | 7,916,462 | 5,730 |
| Robert E Murray | 13 | 11 | 2 | 25,152,612 | 2,383 | 5,557,839 | 2,544 |
| Patriot Coal Corporation | 11 | 2 | 9 | 18,359,890 | 2,227 | 4,780,134 | 3,771 |
| James River Coal Company | 11 | 7 | 4 | 9,172,596 | 1,111 | 2,692,418 | 1,574 |
| Arch Coal Inc | 11 | 6 | 5 | 23,401,720 | 1,607 | 3,595,525 | 3,510 |
| TECO Energy Inc | 8 | 3 | 5 | 2,024,581 | 372 | 858,103 | 867 |
| Richard Gilliam | 6 | 6 | 0 | 6,087,901 | 676 | 1,547,081 | 714 |
| Wexford Capital LLC | 6 | 2 | 4 | 2,547,400 | 430 | 881,488 | 1,046 |
| Peabody Energy | 5 | 2 | 3 | 19,484,533 | 1,660 | 3,664,132 | 5,213 |
| J Clifford Forrest III | 5 | 4 | 1 | 4,617,379 | 411 | 900,986 | 462 |
| Metinvest B V | 5 | 3 | 2 | 2,197,664 | 476 | 1,019,525 | 722 |
| John D North; Ralph Napier | 5 | 5 | 0 | 194,706 | 28 | 57,772 | 28 |
| Long Branch Energy Corporation | 4 | 4 | 0 | 2,599,816 | 366 | 775,956 | 366 |
| James O Bunn; Franklin D Robertson | 3 | 2 | 1 | 1,499,239 | 205 | 458,809 | 372 |

---

[1] Fatality figures include both employees and contractors. Data on number of employees and hours worked do not include contractors.

```
-----Original Message-----
From: Block, Sharon - OCIA
Sent: Friday, May 07, 2010 12:06 PM
To: Navin, Jeffrey - OSEC
Cc: Wagner, Gregory - MSHA; Kennedy, Brian - OCIA
Subject: Key themes for approps hearing testimony
```

Jeff -- Can you please share the revised key themes for Joe's upcoming testimony with Deborah and Tricia too?  Teri has confirmed that the approps committee expects Tricia to testify also. Thanks, Sharon

Confidential Agency Document
DLB-001442

| | |
|---|---|
| **From:** | Bragg, Melody E - MSHA |
| **Sent:** | Monday, October 21, 2013 8:26 AM |
| **To:** | Francart, William J - MSHA; zzMSHA-Upper Big Branch IR2; Swentosky, Denny |
| **Subject:** | RE: Don Blankenship |

Sounds that way to me!
Let's just hope that the Justice Department reads the newspaper☺

Melody Bragg
Technical Information Specialist
MSHA Technical Information Center
National Mine Health and Safety Academy
(304) 256-3556

**From:** Francart, William J - MSHA
**Sent:** Monday, October 21, 2013 8:09 AM
**To:** zzMSHA-Upper Big Branch IR2; Swentosky, Denny
**Subject:** Don Blankenship

http://www.wowktv.com/story/23732587/former-massey-energy-ceo-don-blankenship-speaks-out

A bit of an admission of guilt of advance notice in this interview?

Confidential Agency Document
DLB-001522

| | |
|---|---|
| **From:** | Thomas, Charles J - MSHA |
| **Sent:** | Friday, May 24, 2013 8:08 AM |
| **To:** | Pon, Melinda - MSHA |
| **Subject:** | RE: Act of Vengeance: Don Blankenship says, 'If they put me behind bars ... it will be political' « Coal Tattoo |

Wow, great article Melinda. This boosts my confidence Norman and Company presented the truth. Hard to tackle the truth.

I also like the responses to the article. All three spot on.

Have a great weekend and remember our fallen servicemen and women.

-----Original Message-----
From: Pon, Melinda - MSHA
Sent: Friday, May 24, 2013 7:31 AM
To: zzMSHA-Coal Administrators Office; zzMSHA-Coal AI Office; zzMSHA-Coal Health Division; zzMSHA-Coal Management Office ; zzMSHA-Coal Safety Division; zzMSHA-Coal District Managers; zzMSHA-Coal Assistant District Managers; zzMSHA-Coal Staff Assistants; zzMSHA-Coal District Managers Secretaries ; Chirdon, David C - MSHA; Smith, Ted D - MSHA
Subject: Act of Vengeance: Don Blankenship says, 'If they put me behind bars ... it will be political' « Coal Tattoo

http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/

Confidential Agency Document
DLB-001523

Act of vengeance: Don Blankenship says, 'If they pump the bad air in we will be pong.' Page 15 of 7

Case 5:18-cv-00591 Document 93-17 Filed 09/05/18 Page 6 of 126 PageID #: 3715

(http://blogs.wvgazettemail.com/coaltattoo)

 (http://www.wvgazettemail.com)

# Coal Tattoo

(http://blogs.wvgazettemail.com/coaltattoo)

☐ **Subscribe to the Coal Tattoo (/coaltattoo/feed/)**

## Pages

- About Coal Tattoo (http://blogs.wvgazette.com/coaltattoo/about/)
- Blogroll (http://blogs.wvgazette.com/coaltattoo/blogroll/)
- Comment policy (http://blogs.wvgazette.com/coaltattoo/comment-policy/)

## Search this blog

| Search |
|--------|

Search

## Recent Posts

- The politics of why Don Blankenship isn't a felon (http://blogs.wvgazette.com/coaltattoo/2018/05/07/the-politics-of-why-don-blankenship-isnt-a-felon/)
- What politicians could say when coal miners die (http://blogs.wvgazette.com/coaltattoo/2018/01/02/what-politicians-could-say-when-coal-miners-die/)
- Merry Christmas from Coal Tattoo (http://blogs.wvgazette.com/coaltattoo/2017/12/22/merry-christmas-from-coal-tattoo-7/)
- The real story of the Hobet project and how lax mountaintop removal regulation has held back coalfield development (http://blogs.wvgazette.com/coaltattoo/2017/12/19/the-real-story-of-the-hobet-project-and-how-lax-mountaintop-removal-regulation-has-held-back-coalfield-development/)
- The Don Blankenship Senate campaign: Asking the wrong question about the Upper Big Branch Mine Disaster (http://blogs.wvgazette.com/coaltattoo/2017/12/13/the-don-blankenship-senate-campaign-asking-the-wrong-question-about-the-upper-big-branch-mine-disaster/)

## Archives

Archives

| Select Month |
|--------------|

## Categories

- Abandoned mines (http://blogs.wvgazette.com/coaltattoo/category/abandoned-mines/)
- Air pollution (http://blogs.wvgazette.com/coaltattoo/category/air-pollution/)
- Alternative energy (http://blogs.wvgazette.com/coaltattoo/category/alternative-energy/)
- Black lung (http://blogs.wvgazette.com/coaltattoo/category/black-lung/)
- Blankenship Trial (http://blogs.wvgazette.com/coaltattoo/category/blankenship-trial/)
- Blog business (http://blogs.wvgazette.com/coaltattoo/category/blog-business/)
- Books (http://blogs.wvgazette.com/coaltattoo/category/books/)
- Business (http://blogs.wvgazette.com/coaltattoo/category/business/)
- CCS (http://blogs.wvgazette.com/coaltattoo/category/ccs/)
- Climate policy (http://blogs.wvgazette.com/coaltattoo/category/climate-policy/)
- Climate science (http://blogs.wvgazette.com/coaltattoo/category/climate-science/)
- Coal ash (http://blogs.wvgazette.com/coaltattoo/category/coal-ash/)

Confidential Agency Document
DLB-001524

- Coal business (http://blogs.wvgazette.com/coaltattoo/category/coal-business/)
- Coal pollution (http://blogs.wvgazette.com/coaltattoo/category/coal-pollution/)
- Congress (http://blogs.wvgazette.com/coaltattoo/category/congress/)
- Corporate welfare (http://blogs.wvgazette.com/coaltattoo/category/corporate-welfare/)
- Green jobs (http://blogs.wvgazette.com/coaltattoo/category/green-jobs/)
- Health (http://blogs.wvgazette.com/coaltattoo/category/health/)
- History (http://blogs.wvgazette.com/coaltattoo/category/history/)
- International news (http://blogs.wvgazette.com/coaltattoo/category/international-news/)
- Labor (http://blogs.wvgazette.com/coaltattoo/category/labor/)
- Legal actions (http://blogs.wvgazette.com/coaltattoo/category/legal-actions/)
- Legislature (http://blogs.wvgazette.com/coaltattoo/category/legislature/)
- Media coverage (http://blogs.wvgazette.com/coaltattoo/category/media-coverage/)
- Mine Safety (http://blogs.wvgazette.com/coaltattoo/category/mine-safety/)
- Mountaintop Removal (http://blogs.wvgazette.com/coaltattoo/category/mountaintop-removal/)
- OSMRE (http://blogs.wvgazette.com/coaltattoo/category/osmre/)
- Peak coal (http://blogs.wvgazette.com/coaltattoo/category/peak-coal/)
- Politics (http://blogs.wvgazette.com/coaltattoo/category/politics/)
- Power lines (http://blogs.wvgazette.com/coaltattoo/category/power-lines/)
- Protest actions (http://blogs.wvgazette.com/coaltattoo/category/protest-actions/)
- Selenium (http://blogs.wvgazette.com/coaltattoo/category/selenium/)
- Slurry impoundments (http://blogs.wvgazette.com/coaltattoo/category/slurry-impoundments/)
- Strip mine science (http://blogs.wvgazette.com/coaltattoo/category/strip-mine-science/)
- Uncategorized (http://blogs.wvgazette.com/coaltattoo/category/uncategorized/)
- Upcoming events (http://blogs.wvgazette.com/coaltattoo/category/upcoming-events/)
- Upper Big Branch Disaster (http://blogs.wvgazette.com/coaltattoo/category/upper-big-branch-disaster/)
- Water pollution (http://blogs.wvgazette.com/coaltattoo/category/water-pollution/)
- Workplace safety (http://blogs.wvgazette.com/coaltattoo/category/workplace-safety/)

## Act of Vengeance: Don Blankenship says, 'If they put me behind bars … it will be political' (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/)

*May 23, 2013 by Ken Ward Jr.*



(http://blogs.wvgazette.com/coaltattoo/files/2009/09/rally12_i0909072049581.jpg)

Back in February, when one-time Massey Energy official David C. Hughart (http://www.wvgazette.com/News/montcoal/201211280047) alleged that former CEO Don Blankenship was part of a conspiracy to cover up mine safety violations, Blankenship's lawyer made it pretty clear what he thought of Hughart and his claims. As we reported at the time (http://www.wvgazette.com/News/montcoal/201302280018):

*William Taylor, a lawyer for Blankenship, said his client has done nothing wrong and downplayed the significance of what Hughart said.*

*"We were quite surprised at the reports of Mr. Hughart's statements at the time of his guilty plea," Taylor said. "Don Blankenship did not conspire with anybody to do anything illegal or improper. To the contrary, he did everything he could to make Massey's mines safe.*

*"We're not concerned particularly about the story concerning Mr. Hughart," Taylor said. "It's not surprising that people say untrue things when they are trying to reduce a possible prison sentence."*

Confidential Agency Document
DLB-001525

Well, yesterday Blankenship added to what his lawyer had to say. The former Massey CEO has a new post on his "American Competitionist (http://www.donblankenship.com)" website and blog. It's headlined MSHA Carries Out Obama/Roberts Agenda (http://www.donblankenship.com/msha-obama-roberts1.html). At the end, Blankenship has this to say about U.S. Attorney Booth Goodwin's ongoing criminal investigation of the Upper Big Branch Mine Disaster and Massey:

> If they put me behind bars … it will be political.

And he concludes with this comment about Hughart:

> As for Dave Hughart who Cecil cites as a witness and who says I conspired with him to notify miners that inspectors were on mine property – Dave was fired by Massey prior to the UBB explosion and theft- i.e. basically what he was arrested for. He is expecting to get a reduced sentence for his plea. Maybe he will, but he is not telling the truth about me.

We've reported before (http://www.wvgazette.com/News/montcoal/201211280047) about Hughart's record, citing internal company records made public and filed in court that show he was, in fact, fired a few weeks before the Upper Big Branch Mine blew up on April 5, 2010 (Hughart actually didn't work at UBB, but at other Massey operations):

> Internal Massey documents, made public as part of lawsuits against the company, show that Hughart was fired on March 19, 2010.

> Hughart had failed a random drug test and "seemed to be having financial difficulty," according to the documents, which were unsealed by a court action brought by The Charleston Gazette and NPR News. Massey auditors alleged that Hughart hired his son, promoted him to an $89,000-a-year job, and gave him a company truck to drive. The audit report, filed in Kanawha Circuit Court, also alleged that Hughart received $150,000 in kickbacks between May 2008 and March 2010, by having a Massey contract firm fake invoices for work that was never performed.

Now, if you're wondering what got Blankenship thinking about all of this, he seems to offer two reasons.

First, he cites recent comments by UMWA President Cecil Roberts in the union's magazine (http://www.umwa.org/files/u1/UMW_Jrl_MarAprWEB.pdf) (see page 20):

> Cecil Roberts, in the March/April addition of the UMWA Journal, said "I commend U.S. Attorney Booth Goodwin for taking this investigation where no one else has, and look forward to the day when Don Blankenship is behind bars; where he belongs." Cecil has never been reluctant to say outrageous things or to lie about me, as he can't get over his failure in the strike of 1985. In this case, I hope people will see his obvious effort to influence prosecutors for what it is.

(http://blogs.wvgazette.com/coaltattoo/files/2013/05/act_of_vengeance_dvd_cover_copy_1.jpg)But according to his blog, Blankenship also has recently watched "Act of Vengeance, (http://www.imdb.com/title/tt0090588/)" the 1986 movie in which Charles Bronson portrays UMWA reformer Jock Yablonski (http://www.youtube.com/watch?v=mZwatFtCrME):



> The movie is about then UMWA President Tony Boyles' hiring of assassins to kill his political opponent Jock Yablonski in 1969. At one point in the movie, an actor playing UMWA executive council member Albert Puss says, "If he (Yablonski) wins a hell of a lot of us will go to jail."

Blankenship goes on to suggest that the U.S. Mine Safety and Health Administration increased its enforcement actions at the Upper Big Branch Mine and other Massey operations as part of some vast conspiracy to cover up something about the death of a non-union truck driver during the union's 1985-96 strike against Massey: (http://newslibrary.cnpapers.com/cgi-bin/texis/search/+KmeSXHNeGhbtq4Mw55nOarwOn5ain5BawGDdcmamotrBcwDmqzmnwwwmFqhWK8X5hFq0eRGlnGeRRHmqwceRkHmGprveRDxxI id=47d183d817a9)

> But something else may interest some of you. It is the possible connection of conversations I had with a guy named Arnold Heightland and the increased scrutiny on Massey mines by MSHA. Arnold Heightland is one of four persons convicted for "interfering with the transport of coal" during a 1985 strike by shooting and killing Hayes West, a non-union truck driver.

> Arnold Heightland was released from prison in 2009. I asked him the question-"Did someone pay you to be involved in the killing of Hayes West?" Unfortunately Arnold, after consulting with his attorneys, responded by pointing out to me that he had never been tried for murder and therefore he could not answer. You see there is no statute of limitation on murder, and it is important to note that likewise there is no statute of limitation on murder for hire.

> In the months after my asking Heightland this question about the shooting, MSHA violations increased to record levels at Massey mines.

Blankenship goes on to repeat his previous claims about the cause of the Upper Big Branch explosion that killed 29 miners:

Confidential Agency Document
DLB-001526

*MSHA made it clear in 2009 that UBB would be forced to use MSHA's preferred ventilation plan even as company engineers advised and protested against it. The week after MSHA's forced changes were made and ventilation thereby reduced, the mine exploded.*

*UBB may or may not have exploded anyway given the huge unpredicted inundation of natural gas.*

As I've previously written about this gas inundation issue (http://blogs.wvgazette.com/coaltattoo/2013/01/11/ubb-update-don-blankenship-is-at-it-again/):

*Now, as difficult as many folks might find this to take, Blankenship has a point here. We broke the story long ago (http://wvgazette.com/News/montcoal/201006091064) about how there had been previous methane outbursts at the Upper Big Branch Mine prior to the 2010 explosion. And we've reported on how the U.S. Mine Safety and Health Administration's own investigation concluded that exactly this sort of methane leak (http://wvgazette.com/News/montcoal/201112070283) likely was part of what began the chain of events that killed those 29 miners. And we revealed how MSHA blocked questions (http://wvgazette.com/News/montcoal/201112080240) by independent investigator Davitt McAteer's team about what federal officials did — and didn't do — to follow-up on the previous methane incidents at Upper Big Branch.*

But it's also important to remember that every independent expert that has investigated the Upper Big Branch Disaster has rejected Blankenship's broader take on events there, and his effort to place the blame on anything but Massey and the company's failure to take very basic safety precautions. We reviewed this all before in a post called *UBB update: Don Blankenship is at it again* (http://blogs.wvgazette.com/coaltattoo/2013/01/11/ubb-update-don-blankenship-is-at-it-again/):

[Special investigator Davitt] McAteer's team, for example, said in its report (http://www.nttc.edu/programs&projects/minesafety/disasterinvestigations/upperbigbranch/toc.asp):

*... Even if the cause of the explosion had been found to be an infusion of natural gas or methane into the UBB mine atmosphere, such an event was entirely foreseeable. The previous incidents in 1997, 2003 and 2004 were well documented and should have served as ample warning for the company and provided an incentive to develop and follow a plan to deal with future outbursts.*

And, McAteer's team included in its report an entire chapter (http://www.nttc.edu/programs&projects/minesafety/disasterinvestigations/upperbigbranch/chapter8.asp) which debunks the notion of an uncontrollable natural gas inundation, and supports the conclusion that the disaster involved a small methane ignition that only turned into a huge explosion because Massey had failed to control the buildup of coal dust at the mine:

*Ultimately, the footprint left behind in the Upper Big Branch mine and the testimony of survivors supports the initial theory that the explosion started with methane and fed on coal dust as it tore through the mine. The footprint, supported by witness testimony, also offered concrete evidence that Massey Energy failed in its responsibility to provide a safe workplace for its workers.*

United Mine Workers union safety experts concluded in their own report (http://www.umwa.org/files/documents/134334-Upper-Big-Branch.pdf):

*Some of the most deadly mine disasters in history have been the result of mine operators violating the mandatory requirements of this section of the Mine Act. This is what happened at UBB. The final deadly event was played out on April 5, 2010, but one of the major causes of the explosion–float coal dust–was permitted to accumulate for months before the explosion. These accumulations were widespread, encompassing almost all of the active sections and intake and return air courses. Many of the citations issued in just the fifteen months before the explosion demonstrate how imminent this danger was.*

The West Virginia Office of Miners' Health, Safety and Training concluded (http://www.wvminesafety.org/PDFs/Performance/EXECUTIVE%20SUMMARY.pdf):

*The methane explosion quickly transitioned into a coal dust explosion, which severely damaged ventilation controls, conveyor belts, water lines, electrical systems and numerous items in its path until the fuel was consumed and the explosion extinguished itself outby the track switch at the beginning of North Glory Mains. The amount of rock dust being maintained on mine surfaces at the time of the explosion was insufficient to stop a coal dust explosion. The region where the dust explosion started does not appear to have had rock dust periodically applied over the fine coal dust. Periodic applications of rock dust over accumulating fine coal dust are necessary to render such dust harmless.*

And MSHA found in its investigation report (http://www.msha.gov/Fatals/2010/UBB/FTL10c0331noappx.pdf):

*PCC/Massey allowed conditions in the UBB mine to exist that set the stage for a catastrophic mine explosion. The tragedy at UBB began with a methane ignition that transitioned into a small methane explosion that then set off a massive coal dust explosion. If basic safety measures had been in place that prevented any of these three events, there would have been no loss of life at UBB.*

Moreover, MSHA reported:

Confidential Agency Document
DLB-001527

*While violations of particular safety standards led to the conditions that caused the explosion, the unlawful policies and practices implemented by PCC/Massey were the root cause of this tragedy. The evidence accumulated during the investigation demonstrates that PCC/Massey promoted and enforced a workplace culture that valued production over safety, including practices calculated to allow it to conduct mining operations in violation of the law.*

*The investigation also revealed multiple examples of systematic, intentional, and aggressive efforts by PCC/Massey to avoid compliance with safety and health standards, and to thwart detection of that non-compliance by federal and state regulators.*

And, MSHA concluded:

*Massey routinely ignored obvious safety hazards and let conditions develop that allowed a small methane ignition to propagate into a massive coal dust explosion. The tragic deaths of 29 miners and serious injuries to two others at Upper Big Branch were entirely preventable.*



(http://blogs.wvgazette.com/coaltattoo/files/2010/04/minercrosses.jpg)

112

Comments (5) (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comments)

Categories

- Legal actions (/coaltattoo/category/legal-actions)
- Media coverage (/coaltattoo/category/media-coverage)
- Mine Safety (/coaltattoo/category/mine-safety)
- Upper Big Branch Disaster (/coaltattoo/category/upper-big-branch-disaster)

Comments

1.

Frank May 23, 2013 (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comment-141380)

Don Blankenship (not unlike many, many other coal operators) spent millions of dollars to manipulate the state's political system to his convenience. He does not have the credibility to now claim to be a victim of the very political system he molded.

2. 

Vivian Stockman (http://www.ohvec.org) May 24, 2013 (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comment-141426)

Maybe another reason Blankenship is pontificating upon his potential arrest is that he's reading (or at least hearing about) "The Price of Justice" by Laurence Leamer. I finished the book last night, but I am sure I am not the only reader waiting for the final chapter.

Confidential Agency Document
DLB-001528

3. 

*Pragmatic Realist* May 24, 2013 (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comment-141428)

Well, we will see who is lying and what evidence and innuendo is relevant. That's why we have trials. I don't think movies are admissible.

4.

*Danny W.* May 24, 2013 (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comment-141436)

Blankenship is right; if he's jailed it will certainly be political. It's the political system which gives government the power to set and enforce safety standards. Blankenship and his ilk would be free to run their businesses like "Lord of the Flies" if it weren't for those darn pesky politicians and their silly laws.

5.

*Jolene (http://Idon'thaveone)* May 25, 2013 (http://blogs.wvgazette.com/coaltattoo/2013/05/23/act-of-vengeance-don-blankenship-says-if-they-put-me-behind-bars-it-will-be-political/#comment-141444)

I agree wholeheartedly with Frank's post of May 23. People like him have spent their money to control politics for far too long. Perhaps, Don Blankenship is beginning to feel the heat – just maybe.

## Leave a Comment

Name (required)

Email (will not be published) (required)

Website

Comment

XHTML: You can use these tags: `<a href="" title=""> <abbr title=""> <acronym title=""> <b> <blockquote cite=""> <cite> <code> <del datetime=""> <em> <i> <q cite=""> <s> <strike> <strong>`

Submit Comment

☐ Notify me of follow-up comments by email.

☐ Notify me of new posts by email.

## Categories

- Abandoned mines (http://blogs.wvgazette.com/coaltattoo/category/abandoned-mines/)
- Air pollution (http://blogs.wvgazette.com/coaltattoo/category/air-pollution/)
- Alternative energy (http://blogs.wvgazette.com/coaltattoo/category/alternative-energy/)
- Black lung (http://blogs.wvgazette.com/coaltattoo/category/black-lung/)
- Blankenship Trial (http://blogs.wvgazette.com/coaltattoo/category/blankenship-trial/)
- Blog business (http://blogs.wvgazette.com/coaltattoo/category/blog-business/)

Confidential Agency Document
DLB-001529

- Books (http://blogs.wvgazette.com/coaltattoo/category/books/)
- Business (http://blogs.wvgazette.com/coaltattoo/category/business/)
- CCS (http://blogs.wvgazette.com/coaltattoo/category/ccs/)
- Climate policy (http://blogs.wvgazette.com/coaltattoo/category/climate-policy/)
- Climate science (http://blogs.wvgazette.com/coaltattoo/category/climate-science/)
- Coal ash (http://blogs.wvgazette.com/coaltattoo/category/coal-ash/)
- Coal business (http://blogs.wvgazette.com/coaltattoo/category/coal-business/)
- Coal pollution (http://blogs.wvgazette.com/coaltattoo/category/coal-pollution/)
- Congress (http://blogs.wvgazette.com/coaltattoo/category/congress/)
- Corporate welfare (http://blogs.wvgazette.com/coaltattoo/category/corporate-welfare/)
- Green jobs (http://blogs.wvgazette.com/coaltattoo/category/green-jobs/)
- Health (http://blogs.wvgazette.com/coaltattoo/category/health/)
- History (http://blogs.wvgazette.com/coaltattoo/category/history/)
- International news (http://blogs.wvgazette.com/coaltattoo/category/international-news/)
- Labor (http://blogs.wvgazette.com/coaltattoo/category/labor/)
- Legal actions (http://blogs.wvgazette.com/coaltattoo/category/legal-actions/)
- Legislature (http://blogs.wvgazette.com/coaltattoo/category/legislature/)
- Media coverage (http://blogs.wvgazette.com/coaltattoo/category/media-coverage/)
- Mine Safety (http://blogs.wvgazette.com/coaltattoo/category/mine-safety/)
- Mountaintop Removal (http://blogs.wvgazette.com/coaltattoo/category/mountaintop-removal/)
- OSMRE (http://blogs.wvgazette.com/coaltattoo/category/osmre/)
- Peak coal (http://blogs.wvgazette.com/coaltattoo/category/peak-coal/)
- Politics (http://blogs.wvgazette.com/coaltattoo/category/politics/)
- Power lines (http://blogs.wvgazette.com/coaltattoo/category/power-lines/)
- Protest actions (http://blogs.wvgazette.com/coaltattoo/category/protest-actions/)
- Selenium (http://blogs.wvgazette.com/coaltattoo/category/selenium/)
- Slurry impoundments (http://blogs.wvgazette.com/coaltattoo/category/slurry-impoundments/)
- Strip mine science (http://blogs.wvgazette.com/coaltattoo/category/strip-mine-science/)
- Uncategorized (http://blogs.wvgazette.com/coaltattoo/category/uncategorized/)
- Upcoming events (http://blogs.wvgazette.com/coaltattoo/category/upcoming-events/)
- Upper Big Branch Disaster (http://blogs.wvgazette.com/coaltattoo/category/upper-big-branch-disaster/)
- Water pollution (http://blogs.wvgazette.com/coaltattoo/category/water-pollution/)
- Workplace safety (http://blogs.wvgazette.com/coaltattoo/category/workplace-safety/)

## Charleston Gazette-Mail

- **READ US:** Visit Website (http://www.wvgazettemail.com)
- **CALL US:** 304-348-4812
- **VISIT US:**
  1001 Virginia Street East
  Charleston, WV 25301

Charleston Gazette-Mail © 2015. All rights reserved.

Privacy Policy (http://www.cnpapers.com/privacy/)

(http://www.statcounter.com)

Confidential Agency Document
DLB-001530

Confidential Agency Document
DLB-001531

**From:** Block, Sharon I - OSEC
**Sent:** Thursday, November 13, 2014 4:25:59 PM
**To:** Colangelo, Matthew - OSEC; Thomas Perez
**Subject:** Fw: Blankenship indicted


And sometimes bad things happen to bad people.


**From:** Zaffirini, Tony - OCIA
**Sent:** Thursday, November 13, 2014 4:24:10 PM
**To:** Jayaratne, Adri - OCIA; Block, Sharon I - OSEC
**Subject:** Blankenship indicted


FYI


http://www.justice.gov/usao/wvs/press_releases/2014-11-
Nov/attachments/1113142_Blankenship_Indictment.html

Confidential Agency Document
DLB-001532

# FORMER MASSEY ENERGY CEO INDICTED

*Donald Blankenship Faces Four Charges Including Conspiracy, Fraud and Making False Statements*

**CHARLESTON, W.Va.** – United States Attorney Booth Goodwin announced that a federal grand jury today returned an indictment charging Donald L. Blankenship, former Chief Executive Officer of Massey Energy Company, with four criminal offenses. The indictment charges Blankenship with conspiracy to violate mandatory federal mine safety and health standards, conspiracy to impede federal mine safety officials, making false statements to the United States Securities and Exchange Commission (SEC), and securities fraud.

The indictment alleges that from about January 1, 2008, through about April 9, 2010, Blankenship conspired to commit and cause routine, willful violations of mandatory federal mine safety and health standards at Massey Energy's Upper Big Branch mine, located in Raleigh County, West Virginia. The indictment alleges that during this same period of time, Blankenship was part of a conspiracy to impede and hinder federal mine safety officials from carrying out their duties at Upper Big Branch by providing advance warning of federal mine safety inspection activities, so their underground operations could conceal and cover up safety violations that they routinely committed.

The indictment further alleges that after a major, fatal explosion occurred at Upper Big Branch on April 5, 2010, Blankenship made and caused to be made false statements and representations to the SEC concerning Massey Energy's safety practices prior to the explosion. Additionally, the indictment alleges that, after this explosion, Blankenship made and caused to be made materially false statements and representations, as well as materially misleading omissions, in connection with the purchase and sale of Massey Energy stock.

The FBI and the United States Department of Labor's Office of Inspector General are in charge of the investigation. United States Attorney Booth Goodwin, Counsel to the United States Attorney Steven Ruby, and Assistant United States Attorney Gabriele Wohl are handling the prosecution.

The four counts charged carry a maximum combined penalty of 31 years' imprisonment.

Click here to view a copy of the indictment. An indictment is only an allegation, and the defendant is presumed innocent unless and until proven guilty.

Confidential Agency Document
DLB-001533

| | |
|---|---|
| **From:** | Fillichio, Carl - OPA |
| **Sent:** | Wednesday, October 26, 2011 7:45 PM |
| **To:** | Hilda Solis |
| **Subject:** | Re: UBB Trial: Conviction |

I will check with trish. Have some ideas.

**From:** Hilda Solis
**Sent:** Wednesday, October 26, 2011 07:32 PM
**To:** Fillichio, Carl - OPA
**Subject:** Re: UBB Trial: Conviction

Wow, victory at last! What can we do to post or amplify?

**From:** Fillichio, Carl - OPA
**Sent:** Wednesday, October 26, 2011 07:13 PM
**To:** Hilda Solis
**Subject:** UBB Trial: Conviction

**Secy: thought you'd want to know about this.**

**ASSOCIATED PRESS: Hughie Elbert Stover, Former Security Chief At West Virginia Coal Mine, Convicted Of Impeding Investigation by LAWRENCE MESSINA  10/26/11**

BECKLEY, W.Va. — The only person prosecuted so far in the worst U.S. coal-mining disaster in decades was convicted Wednesday of lying to investigators probing the 2010 explosion that killed 29 men at the Upper Big Branch mine in West Virginia.

It took jurors about six hours to find 60-year-old Hughie Elbert Stover guilty on the lying charge and a second count of disposing of thousands of security-related documents following the explosion. The jury had begun deliberating Wednesday morning after hearing two days of testimony in which prosecutors painted Stover as an obstructionist and defense attorneys claimed he was a scapegoat.

He remains free pending a Feb. 29 sentencing hearing.

No one else has been charged in the mine disaster, but investigations continue. U.S. Attorney Booth Goodwin said no potential criminal charges for others are off the table.

"There were serious matters that existed in this mine that didn't just happen overnight or without the involvement of individuals," he said.

Stover's attorney, William Wilmoth, said it was too early to discuss any future motions or appeals. "While we're disappointed at this result, we're very appreciative of their services," he said of the eight men and four women on the jury.

Confidential Agency Document
DLB-001534

Earlier in the day, prosecutors told jurors during closing arguments that Stover misled investigators following the disaster and then sought to throw out thousands of security-related records, perhaps to protect himself.

"There's too much at stake here," Assistant U.S. Attorney Larry Ellis argued, while urging the jury to "send a message that this investigation ought to be allowed to go forward."

Stover's defense portrayed the former Marine and law enforcement officer as a victim of the government's zeal to blame someone for the deadly explosion.

"You wanted justice, and this is who they brought you," Wilmoth said during his closing argument in the trial that began Monday.

Assistant U.S. Attorney Blaire Malkin had earlier reminded jurors of testimony from others at the Raleigh County underground mine. These witnesses alleged that Stover instructed mine guards to send out alerts by radio whenever inspectors entered the property. Such a practice is illegal. One of the criminal charges alleges Stover denied in a November 2010 interview with investigators that there were any advance warnings at the mine.

"This so-called by-the-book guy had his own playbook and terminology," Malkin said.

The other count alleges that Stover sought to destroy the documents the following January, by ordering a subordinate to bag and then throw them into an on-site trash compactor. Ellis suggested to jurors Wednesday that those records would prove that Stover had lied about inspection tip-offs. The attempted disposal also violated repeated warning from the mine's then-owner, Massey Energy, to keep all records while the disaster remained under investigation. Massey officials told investigators of the trashed documents, which were recovered.

Wilmoth attributed Stover's November statements to confusion over evolving policies at the mine, run by Massey subsidiary Performance Coal Co. As for the document disposal, Stover had called that the "stupidest, worst mistake" of his life when he testified Tuesday in his defense.

Questioning criminal intent, Wilmoth said Stover could have burned, shredded or otherwise destroyed the records himself, instead of delegating the task of throwing them out to a subordinate during daylight hours and in front of a security camera. Prosecutors said the documents were dumped around 6 a.m., and after being placed in trash bags. Hauling them out in their cardboard storage boxes would have drawn notice, as would Stover performing the deed himself, prosecutors argued.

In urging jurors to acquit, Wilmoth argued that Stover's actions amounted to innocent mistakes, citing how several witnesses had described him as by-the-book and honest. Rather than targeting mine executives or engineers who may be at fault for the deadly blast, prosecutors have seized on Stover in a game of "government gotcha," Wilmoth told the jury.

"We're no closer to finding the real villain or villains behind this explosion," said Wilmoth, a former U.S. attorney. "Instead, this is what they brought you."

But prosecutors said the trial's testimony, including Stover's, showed that he ignored the law and his superior's own directives. Stover proved willing to jeopardize a crucial probe to save himself, Ellis told the jury.

On Tuesday, the United Mine Workers union criticized government oversight while slamming Massey in a report on the explosion. Labeling the disaster as "industrial homicide," the findings urge criminal charges

Confidential Agency Document
DLB-001535

against a number of then-executives at Massey. Alpha Natural Resources of Abingdon, Va., acquired the Richmond-based Massey in June through a $7.1 billion takeover deal.

| 481 | Nov 6, 2015 | MOTION to Compel Compliance with Subpoena, for Production of Brady, Rule 16, and Jencks Material, and MOION for Evidentiary Hearing as to Donald L. Blankenship (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Brown, Blair) Modified on 11/9/2015 to add additional motion relief (cbo). |
| --- | --- | --- |
| 496 | Nov 15, 2015 | RESPONSE IN OPPOSITION by United States of America as to Donald L. Blankenship re: 481 MOTION to Compel Compliance with Subpoena, for Production of Brady, Rule 16, and Jencks Material as to Donald L. Blankenship and Motion for Evidentiary Hearing as to Donald L. Blankenship (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Wohl, Gabriele) |
| 549 | Dec 9, 2015 | MEMORANDUM OPINION AND ORDER: The Court ORDERS that the 481 MOTION to Compel Compliance with Subpoena, For Production of Brady, Rule 16, and Jencks Material, and for Evidentiary Hearing be DENIED. Signed by Judge Irene C. Berger on 12/9/2015. (cc: Judge, USA, USP, USM, counsel, deft) (slr) |

*N.B.* Although it is clear some documents were produced to Mr. Blankenship under *Brady*, it is unclear how much of the information in this file was provided. With this in mind, the Court has already ruled on the issue and denied his subpoena. To ensure the USAO and DOL are compliant with Brady, Jencks, and Rule 16, it is preferential that such information as appropriate and which is not privileged be rereleased to Mr. Blankenship and his legal team.

U.S. Department of Labor

Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



MAY 1 1 2012

MEMORANDUM FOR GWEN M. STROUD
     Complaint Analysis Officer
     Office of the Inspector General

FROM:    PATRICIA W. SILVEY
     Deputy Assistant Secretary for Operations
     Mine Safety and Health

SUBJECT:   Allegation: Possible Employee Misconduct

I have attached an allegation of possible employee misconduct related to the Upper Big Branch Mine file.  I request that the Department of Labor, Office of Inspector General, investigate this allegation.

Attachment

Confidential Agency Document
DLB-001538

May 10, 2012

Kevin,

I don't know if any of what I have been told is valid, or if this allegation has already been investigated. This is paraphrased and to the best of my memory.

Yesterday, while at the Academy, I encountered an employee who had previously worked at District 4, I                          . She discussed a current District 4 employee who had been asking advice about requesting a transfer to District 12. The conversation turned to what the District had been through with UBB and she mentioned how Joe Mackowiak switched those files after UBB and got away with it (paraphrased). We were interrupted and she walked away.

This morning around 9:30 to 10:00, I found her office and told her the employee interested in District 12 had contacted me. Then I told her that I had been concerned by her statement from the day before and asked her what files she was talking about. She said she regretted blurting that out.

She told me that after the explosion at UBB, Joe Mackowiak had (by instruction or personally?) removed the uniform mine file books for UBB and retrieved the field office mine file stamps. She indicated that the outdated plans were purged and that the more recent approved plans that had backlogged in the ventilation department were stamped with both district stamps and field office stamps. The stamped entry dates were backdated to make it appear the plans were already in the files prior to the explosion and the secretary's initials were forged. She believed the ventilation secretary was on maternity leave.

I asked her who would have knowledge of this other than her. She did not know if the field office secretaries would know, but indicated that                          (program analyst) and some of the vent specialists would. She thought                          (vent specialist) would.

I hope this is in error, but believe I am compelled to report this allegation.

Thank you,

DLB-001539

MEMORANDUM FOR GWEN M. STROUD
Complaint Analysis Officer
Office of the Inspector General


FROM:                PATRICIA W. SILVEY
Deputy Assistant Secretary for Operations
Mine Safety and Health

SUBJECT:              Allegation: Possible Employee Misconduct

I have attached an allegation of possible employee misconduct related to the Upper Big
Branch Mine file.  I request that the Department of Labor, Office of Inspector General,
investigate this allegation.

Attachment

Confidential Agency Document
DLB-001540



Confidential Agency Document
DLB-001541

**U.S. Department of Labor**     Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



DEC 0 4 2012

MEMORANDUM FOR  CHARLES J. THOMAS
Deputy Administrator
Coal Mine Safety and Health

FROM:           ERNEST A. CAMERON
                Director of Administration and Management

SUBJECT:        Notice of Proposed Seven (7) Day Suspension

This is a notice of a proposal to suspend you from duty and pay for seven (7) calendar
days from your position of Deputy Administrator, ES-1822, Coal Mine Safety and Health
(CMS&H). This action is being proposed to promote the efficiency of the service and is
issued in accordance with Title 5, Code of Federal Regulations, Part 752, and
Departmental Personnel Regulations (DPR) 752.

It is important to note that at the time you failed to carry out your official duties you were
detailed to the Deputy Administrator position. As such, this proposed action is based
upon your position of acting Deputy Administrator during the time period addressed by
this proposed action.

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine (UBB) killing 29
miners and injuring 2. As is MSHA's usual practice, the Assistant Secretary directed
staff to conduct an Internal Review (IR) of the Agency's performance before the
explosion. The reason and specifications in this proposal are derived from issues
identified in the Internal Review report.

**Reason: Failure to Carry out Your Official Duties**

You did not provide appropriate leadership and management oversight necessary to
ensure proper and consistent implementation of the Federal Mine Safety and Health Act
of 1977 (Mine Act) as amended by the Mine Improvement and New Emergency
Response Act of 2006 (MINER Act), implementing standards and regulations, and
MSHA policies and procedures by District 4 personnel under your supervision, as
evidenced by the specifications listed below. Proper management oversight was
particularly important considering the numerous challenges faced by District 4. The
deficiencies that existed in District 4, taken together, should have alerted you that you
had a problem in this District and with UBB.

2

## Specification 1

One of the key responsibilities of your position is to evaluate the results of policy implementation in the field to ensure that Agency objectives are achieved. However, you did not provide adequate management oversight to ensure that District 4 personnel reviewed potentially flagrant violations in accordance with the procedures established by Procedure Instruction Letter (PIL) No. I08-III-02.

During the Internal Review period, 7% of the 137 potentially flagrant violations cited by inspectors in District 4 were reviewed as required by PIL No. I08-III-02. This reflects a lack of management oversight on your part in ensuring effective implementation of an important provision of the MINER Act. This is particularly important since the flagrant violation was a new enforcement tool in the MINER Act.

## Specification 2

Another one of your key responsibilities is to ensure criteria and methods for ensuring compliance with safety and health standards are properly and uniformly applied by all Coal Mine Safety and Health (CMS&H) Districts. Critical standards that field staff must enforce deal with the review and approval of certain mine plans. The IR identified several instances where District 4 management failed to follow CMS&H policies and procedures applicable to the plan approval process.

- District 4 management did not follow the provisions of CMS&H Memo No. HQ-08-058-A when approving the UBB roof control plan. The Administrator for CMS&H issued this memorandum to provide guidance for review and approval of complex and non-typical roof control plans and amendments following the August 2007 fatal coal outbursts at the Crandall Canyon mine.

- District 4 management did not implement the checklists specified by CMS&H Memo HQ-08-059-A when reviewing roof control plans and revisions. Instead, the roof control department continued to use its own checklists.

- District 4 management did not revise the roof control plan approval SOP to comply with the *Program Policy Manual* as recommended by the Office of Inspector General in its 2008 Audit report.

- District 4 management did not follow national guidance outlined in Procedure Instruction Letter No. I09-V-03, which specified that separate ventilation and dust control plans were to be consolidated into a single mine ventilation plan subject to a single review date.

These failures on the part of District 4 show a lack of management oversight on your part.

Failing to carry out your official duties is one of the most serious infractions that can be committed. You were assigned direct responsibility for all CMS&H districts. District

MSHA0002

3

managers, assistant district managers, and field office supervisors were in your management chain.

Deputy Administrator for CMS&H is a very prominent position. You are recognized by the public, mine operators, miners, representatives of miners, and MSHA personnel as having an in-depth knowledge of the Mine Act, MINER Act, implementing standards and regulations, and MSHA policies and procedures.

You were on notice of Agency policies and procedures. In your position as the Director, Office of Accountability, you determined compliance with MSHA policies and procedures. Yet, as acting Deputy Administrator, you did not take corrective action when your subordinate managers were not carrying out their official duties in an effective manner.

I have considered your performance rating for FY 2009 of 'Exemplary' and your FY 2010 and FY 2011 ratings of 'Highly Effective,' your approximate 21 years of federal service at the time these infractions occurred, and the lack of any prior disciplinary action. I believe this proposed seven (7) calendar day suspension will promote the efficiency of the Federal service.

You have the right to respond to this proposal orally and/or in writing and to furnish affidavits and/or other documentary evidence in support of your reply. Any reply is to be made no later than ten (10) calendar days following your receipt of this proposal. Full consideration will be given to any reply you make.

The deciding official in this case will be Ms. Patricia W. Silvey, Deputy Assistant Secretary for Operations, Mine Safety and Health Administration. Any written reply you make in response to the reason and specifications, as well as any written request for an extension of the reply period, should be directed to the attention of Ms. Silvey at the address below.

<div style="text-align:center">

Patricia W. Silvey
Deputy Assistant Secretary for Operations
1100 Wilson Blvd., 23rd Floor
Arlington, VA 22209

</div>

If you wish to make an oral reply, you should contact Ms. Nancy Crawford, Director, Human Resources Division, at 202-693-9808, to arrange for the time and place for the reply.

You have the right to be represented by an attorney or other representative of your choice, unless such choice represents a conflict of interest or position, unreasonable cost to the Government, or the Government has a priority need for the services of an employee who wishes to serve as your representative. You must indicate your choice of representative in writing to Ms. Crawford at 1100 Wilson Blvd., 21st floor, Arlington, VA 22209.

<div style="text-align:center">

Confidential Agency Document
DLB-001544

</div>

MSHA0003

4

As soon as possible after your reply is received, or after the expiration of the reply period if you do not reply, you will be notified in writing of the decision in this case.

If there is anything in this notice concerning the proposed action that you do not understand or if you have a question about the process used, please contact Ms. Crawford.

I request that you sign and date this memorandum as evidence that you received it. Your signature does not mean you agree with the contents of this memorandum. However, your failure to sign will not void the contents of this memorandum.

I acknowledge receipt of this memorandum as indicated below:

*CHARLES J. THOMAS*     *Charles Thomas*     *12/04/2012*

**PRINT NAME**          **SIGNATURE**          **DATE**

Confidential Agency Document
DLB-001545

MSHA0004

**U.S. Department of Labor**    Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



DEC 0 5 2012

MEMORANDUM FOR DONALD WINSTON
                    Supervisory Mine Safety and Health Specialist

FROM:            ERNEST A. CAMERON
                    Director of Administration and Management

SUBJECT:          Notice of Proposed Seven (7) Day Suspension

This is a notice of a proposal to suspend you from duty and pay for seven (7) calendar days from your position of Supervisory Coal Mine Safety and Health Specialist, GS–1822–13, in the Mount Hope, WV, District 4 Office. This action is being proposed to promote the efficiency of the service and is issued in accordance with Title 5, Code of Federal Regulations, Part 752, and Departmental Personnel Regulations (DPR) 752.

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine (UBB) killing 29 miners and injuring 2. As is MSHA's usual practice, the Assistant Secretary directed staff to conduct an Internal Review (IR) of the Agency's performance before the explosion. The reason and specifications in this proposal are derived from issues identified in the Internal Review report.

**Reason: Failure to Carry out Your Official Duties**

**Specification 1**

Following the August 2007 fatal coal outbursts at the Crandall Canyon mine, the Administrator for Coal Mine Safety and Health issued CMS&H Memo No. HQ-08-058-A which provided guidance for review and approval of complex and non-typical roof control plans and amendments.

You failed to follow CMS&H Memo No. HQ-08-058-A when you recommended that the District 4 Manager approve the base roof control plan submitted in October 2009 for UBB, without requiring Performance Coal Company to submit a risk assessment specific to the particular mining operation, including the data and evaluation supporting the proposed roof control plan. In particular, Performance Coal did not provide information, such as a pillar stability analysis, detailing the basis on which it determined the plan to be appropriate and suitable for UBB.

CMS&H Memo No. HQ-08-058-A also required roof control specialists to review operators' ground control analyses to ensure that operators accurately calculated and

Confidential Agency Document
DLB-001546

MSHA0005

You can now file your MSHA forms online at www.MSHA.gov. It's easy, it's fast, and it saves you money!

2

applied pillar stability factors. Instead, District 4 roof control specialists requested examples of pillar stability analyses from mine operators to demonstrate the operators' ability to use the appropriate software.

**Specification 2**

You failed to implement provisions of CMS&H Memo No. HQ-08-059-A. You did not require District 4 Roof Control Department specialists to use the checklists specified by the memorandum when reviewing roof control plans and revisions. The checklists were initially required to be used by roof control department supervisors only. Instructions for all roof control personnel to begin using the checklists were e-mailed to District Managers and Assistant District Managers on January 27, 2009. The e-mail required the use of the checklists during the next plan review. For UBB, this would have been the review of the new base plan submitted by the operator in October 2009.

District 4 had developed its own checklists and other documents for guidance when reviewing initial roof control plans and supplements. While the District 4 Standard Operating Procedures for plan reviews did not require the District checklists to be used, the plan reviewers stated they used the District checklists to assist in completing roof control plan reviews. The District 4 checklists were not the same as those required by CMS&H Memo No. HQ-08-059-A.

CMS&H Memo No. HQ-08-059-A also required that all documentation (MSHA Form 2000-204, checklists, drawings, sketches, etc.) explaining and supporting the roof control plan approval and associated 6-month plan reviews be maintained as part of the roof control plan file for each mine. However, neither the Headquarters nor the District 4 checklists were included in the District 4 plan approval records for the review of the October 2009 UBB base roof control plan.

In reaching my decision to propose a seven (7) calendar day suspension, I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. You were and still are assigned to review the work of technical specialists under your supervision. If you are unable to properly apply MSHA policies and procedures in overseeing the review of roof control plans, specialists may not know when they violate Agency policy and need to correct their actions.

Supervisory CMS&H Specialist is a prominent position. You are recognized by mine operators, miners, representatives of miners, and MSHA personnel as having in-depth knowledge of the Federal Mine Safety and Health Act of 1977 as amended by the Mine Improvement and New Emergency Response Act of 2006, implementing standards and regulations, and MSHA policies and procedures. In your position as Supervisory CMS&H Specialist you are responsible for the quality and quantity of work produced by your subordinates and for ensuring that Agency policies and procedures are followed. You were able to correctly recite Agency policies and procedures to the IR team when questioned on such matters.

3

I have considered your 'Highly Effective' performance ratings for FY 2009, FY 2010, and FY 2011, the lack of any prior disciplinary action, and your approximate 17 years federal service at the time these infractions occurred.  I believe this proposed seven (7) calendar day suspension will promote the efficiency of the Federal service.

You have the right to respond to this proposal orally and/or in writing and to furnish affidavits and/or other documentary evidence in support of your reply.  Any reply is to be made no later than ten (10) calendar days following your receipt of this proposal.  Full consideration will be given to any reply you make.

The deciding official in this case will be Ms. Patricia W. Silvey, Deputy Assistant Secretary for Operations, Mine Safety and Health Administration.  Any written reply you make in response to the reason and specifications, as well as any written request for an extension of the reply period, should be directed to the attention of Ms. Silvey at the address below.

<div align="center">
Patricia W. Silvey<br>
Deputy Assistant Secretary for Operations<br>
1100 Wilson Blvd., 23<sup>rd</sup> Floor<br>
Arlington, VA 22209
</div>

If you wish to make an oral reply, you should contact Ms. Nancy Crawford, Director, Human Resources Division, at 202-693-9808, to arrange for the time and place for the reply.

You have the right to be represented by an attorney or other representative of your choice, unless such choice represents a conflict of interest or position, unreasonable cost to the Government, or the Government has a priority need for the services of an employee who wishes to serve as your representative.  You must indicate your choice of representative in writing to Ms. Crawford at 1100 Wilson Blvd., 21<sup>st</sup> floor, Arlington, VA 22209.

As soon as possible after your reply is received, or after the expiration of the reply period if you do not reply, you will be notified in writing of the decision in this case.

If there is anything in this notice concerning the proposed action that you do not understand or if you have a question about the process used, please contact Ms. Crawford.

You are requested to sign and date this memorandum as evidence that you received it.  Your signature does not mean you agree with the contents of this memorandum.  However, your failure to sign will not void the contents of this memorandum.

I acknowledge receipt of this memorandum as indicated below:

_Donald Winston_
**PRINT NAME**

_Donald Winston_
**SIGNATURE**

_12/5/12_
**DATE**

Confidential Agency Document
DLB-001548

MSHA0007

**U.S. Department of Labor**   Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



DEC 0 5 2012.

MEMORANDUM FOR THOMAS V. MOORE, SR.
                Supervisory Coal Mine Safety and Health Inspector

FROM:          ERNEST A. CAMERON
                  Director of Administration and Management

SUBJECT:       Notice of Proposed Five (5) Day Suspension

This is a notice of a proposal to suspend you from duty and pay for five (5) calendar days from your position of Supervisory Coal Mine Safety and Health Inspector, GS–1822–13, in the Mount Hope, WV, Field Office. This action is being proposed to promote the efficiency of the service and is issued in accordance with Title 5, Code of Federal Regulations, Part 752, and Departmental Personnel Regulations (DPR) 752.

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine (UBB) killing 29 miners and injuring 2. As is MSHA's usual practice, the Assistant Secretary directed staff to conduct an Internal Review (IR) of the Agency's performance before the explosion. The reason and specifications in this proposal are derived from issues identified in the Internal Review report.

**Reason: Failure to Carry out Your Official Duties**

**Specification 1**

Page 19 of the UBB base roof control plan approved by the District 4 Manager on December 23, 2009, required the tailgate travelway of initial longwall panels to have supplemental support in the form of two rows of 8-foot long cable bolts or two rows of posts on 4-foot centers installed in the middle of the entry between primary supports. This supplemental support was required to be maintained 1,000 feet outby the longwall face at all times. The MSHA Accident Investigation team found there was only one row of supplemental support in the tailgate travelway as opposed to the two rows required in the approved roof control plan.

On January 28, 2010, you documented that you reviewed the Uniform Mine File (UMF) prior to accompanying an inspector who was conducting a section 103(i) spot inspection at UBB. The date stamp on the approval letter indicates that the approved roof control plan was filed in the UMF on January 20, 2010.

Confidential Agency Document
DLB-001549

MSHA0008

You can now file your MSHA forms online at www.MSHA.gov. It's easy, it's fast, and it saves you

On March 9, 2010, you inspected the tailgate of the 1 North Longwall at UBB with ventilation specialist Keith Sigmon. You and Mr. Sigmon identified a serious violation of the ventilation plan and issued an order for that condition. However, neither you nor Mr. Sigmon identified the violation of the approved roof control plan. When interviewed by the Internal Review team you stated that you could not recall if posts or cable bolts were installed in the tailgate entry.

Your failure to conduct an adequate review of the Uniform Mine File does not adhere to established MSHA procedures, interferes with the mission of the Agency, and fails to promote the efficiency of the service. It demonstrates a failure to carry out your official duties and mission critical tasks to which you have been assigned.

### Specification 2

On January 12, 2010, Coal Mine Safety and Health (CMS&H) Inspector and Authorized Representative (AR) Perry Brown allowed Right of Entry (ROE) trainee Sabian Vandyke to travel alone to "3 unit" of UBB to determine if a violation involving the lifeline had been abated.

Inspector Brown recorded this information on page 10 of MSHA Form 7000-10K dated January 12, 2010. He wrote: "Scott Vandyke went to 3 unit & checked the lifeline. citation # 8090251 is terminated. Wrote out termination and drove back to Mt. Hope."

On January 20, 2010, you initialed inspector Brown's MSHA Form 7000-10K at the bottom of the form on the line designated for the supervisor's initials and date. You did not question Mr. Brown or Mr. Vandyke regarding the possibility that Mr. Vandyke had traveled alone.

When you signed Form 7000-10K you failed to identify your staff's failure to comply with Section 103(a) of the Mine Act as well as MSHA's Program Policy Manual, which states in relevant part:

> *Inspections and investigations under the Federal Mine Safety and Health Act of 1977 shall be conducted only by persons who have been authorized by the Secretary to conduct such inspections or investigations.*

You also did not comply with District 4's Standard Operating Procedure for authorized representative mentoring of trainees. Item 3 of the guidance stated: "During any inspection activities at a surface or underground mine, the AR shall make certain that the ROE Trainee is close to him/her at all times."

In reaching my decision to propose a five (5) calendar day suspension, I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. You were and still are assigned to review the work of the enforcement personnel under your supervision. If you do not enforce MSHA policy by allowing an ROE trainee to travel unaccompanied and are unable to conduct an adequate review of the Uniform Mine File, inspectors may not know when they violate Agency policy and need to correct their actions.

Confidential Agency Document
DLB-001550

MSHA0009

3

Supervisory CMS&H Inspector is a prominent position. You are recognized by mine operators, miners, representatives of miners, and MSHA personnel as having an in-depth knowledge of the Federal Mine Safety and Health Act of 1977 as amended by the Mine Improvement and New Emergency Response Act of 2006, implementing standards and regulations, and MSHA policies and procedures.

You were on notice of agency policies and procedures. In your position as a Supervisory CMS&H Inspector you are responsible for the quality and quantity of work produced by your subordinates and for ensuring Agency policies and procedures are followed. You were able to correctly recite Agency policies and procedures when questioned by the Internal Review team.

I have considered your 'Highly Effective' performance ratings for FY 2009, FY 2010, and FY 2011 and the lack of any prior disciplinary action. I also have considered that you had approximately 20 years of federal service at the time these infractions occurred. I believe this proposed five (5) calendar day suspension will promote the efficiency of the Federal service.

You have the right to respond to this proposal orally and/or in writing and to furnish affidavits and/or documentary evidence in support of your reply. Any reply is to be made no later than ten (10) calendar days following your receipt of this proposal. Full consideration will be given to any reply you make.

The deciding official in this case will be Ms. Patricia W. Silvey, Deputy Assistant Secretary for Operations, Mine Safety and Health Administration. Any written reply you make in response to the reason and specifications, as well as any written request for an extension of the reply period, should be directed to the attention of Ms. Silvey at the address below.

<div align="center">

Patricia W. Silvey
Deputy Assistant Secretary for Operations
1100 Wilson Blvd., 23rd Floor
Arlington, VA 22209

</div>

If you wish to make an oral reply, you should contact Ms. Nancy Crawford, Director, Human Resources Division, at 202-693-9808, to arrange for the time and place for the reply.

You have the right to be represented by an attorney or other representative of your choice, unless such choice represents a conflict of interest or position, unreasonable cost to the Government, or the Government has a priority need for the services of an employee who wishes to serve as your representative. You must indicate your choice of representative in writing to Ms. Crawford at 1100 Wilson Blvd., 21st floor, Arlington, VA 22209.

As soon as possible after your reply is received, or after the expiration of the reply period if you do not reply, you will be notified in writing of the decision in this case.

<div align="center">

**Confidential Agency Document**
**DLB-001551**

</div>

MSHA0010

4

If there is anything in this notice concerning the proposed action that you do not understand or if you have a question about the process used, please contact Ms. Crawford.

You are requested to sign and date this memorandum as evidence that you received it. Your signature does not mean you agree with the contents of this memorandum. However, your failure to sign will not void the contents of this memorandum.

I acknowledge receipt of this memorandum as indicated below:

_Thomas V. Moore_                  _Thomas V. Moore_                  _12/5/2012_
**PRINT NAME**                          **SIGNATURE**                          **DATE**

**J.S. Department of Labor**

Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



DEC 0 5 2012

MEMORANDUM FOR: LINCOLN L. SELFE, JR.
                        Supervisory Mine Safety and Health Inspector

FROM:           ERNEST A. CAMERON
                 Director of Administration and Management

SUBJECT:        Notice of Proposed Seven (7) Day Suspension

This is a notice of a proposal to suspend you from duty and pay for seven (7) calendar days from your position of Supervisory Mine Safety and Health Inspector, GS–1822–14, in Coal Mine Safety and Health District 4. This action is being proposed to promote the efficiency of the service and is issued in accordance with Title 5, Code of Federal Regulations, Part 752, and Departmental Personnel Regulations (DPR) 752.

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine (UBB) killing 29 miners and injuring 2. As is MSHA's usual practice, the Assistant Secretary directed staff to conduct an Internal Review (IR) of the Agency's performance before the explosion. The reason and specifications in this proposal are derived from issues identified in the Internal Review report.

**Reason: Failure to Carry out Your Official Duties**

At the time you failed to carry out official duties, you were the Assistant District Manager with responsibility for all enforcement activities in the Mt. Hope, Mt. Carbon, Summersville, and Princeton Field Offices. You did not provide appropriate direction and management oversight necessary to ensure proper and consistent enforcement of the Federal Mine Safety and Health Act of 1977 (Mine Act) as amended by the Mine Improvement and New Emergency Response Act of 2006 (MINER Act), implementing standards and regulations, and MSHA policies and procedures by enforcement personnel under your supervision, as evidenced by the specifications listed below. Proper management oversight is particularly important for the development of inexperienced inspectors and supervisors like those in the Mt. Hope Field Office. The deficiencies that existed in the Mt. Hope Field Office, taken together, should have alerted you of a problem in this Field Office and with UBB.

**Specification 1**

One of the key responsibilities of your position is to evaluate the results of policy implementation within your enforcement responsibility to ensure that desired Agency

Confidential Agency Document
DLB-001553

MSHA0012

2

objectives are achieved. However, you did not provide adequate management oversight to ensure that inspectors and supervisors under your supervision reviewed potentially flagrant violations in accordance with the procedures established by Procedure Instruction Letter (PIL) No. I08-III-02.

Mt. Hope Field Office inspectors issued eight section 104(d)(2) orders for violations at UBB that met the "numbered objective criteria" outlined in PIL I08-III-02 for review as potentially flagrant violations. However, inspectors and supervisors in the Mt. Hope Field Office did not review any of the eight orders as potentially flagrant violations. Within your enforcement responsibility, only 9% of the 66 potentially flagrant violations required to be reviewed were reviewed.

This reflects a lack of management oversight on your part in ensuring effective implementation of an important provision of the MINER Act. This is particularly important since the flagrant violation was a new enforcement tool in the MINER Act.

In your interview with the IR team, you were able to correctly enumerate the criteria in PIL No. I08-III-02 for reviewing violations as potentially flagrant. However, none of the inspectors under your enforcement responsibility interviewed by the IR team knew the criteria. Some of your inspectors could not remember receiving training on this important enforcement tool.

**Specification 2**

You did not provide the necessary management oversight to ensure that Right of Entry (ROE) trainees in the Mt. Hope Field Office did not conduct inspection activities apart from Authorized Representatives (ARs). The IR team determined that ROE trainees conducted inspection activities apart from ARs for portions of five of the six regular inspections at UBB during the review period. Proper management oversight was particularly important given the number of inexperienced inspectors and supervisors in the Mt. Hope Field Office.

In your interview with the IR team you demonstrated that you were aware that this practice was a violation of section 103(a) of the Mine Act, which is also contained in MSHA policy, as well as internal District 4 guidance. You did not take effective action to identify and correct this noncompliant behavior.

**Specification 3**

You did not effectively use established Agency tools to identify and correct errors on the part of your subordinate inspectors and supervisors. Mt. Hope Field Office supervisors were required to conduct 78 Accompanied Activities (AAs) and 39 Field Activity Reviews (FARs) during the internal review period. However, documentation provided to the IR team indicated that only 32 AAs and 23 FARs had been conducted.

Supervisors did not document required information on many of the AA and FAR forms. Some supervisors did not document the correct event activity code on the forms, the dates of Uniform Mine File reviews, or the dates when inspectors were debriefed. As part of

3

an AA, the supervisor must accompany an inspector on all aspects of an inspection or investigation. This did not occur in some cases.

During the review period, you documented conducting five second level reviews of enforcement activities conducted by Mt. Hope Field Office personnel, but you did not identify apparent deficiencies in two of your reviews. When interviewed by the IR team, you demonstrated you were aware of the requirements for second level reviews.

In reaching my decision to propose a seven (7) calendar day suspension, I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. You were and still are assigned to review the work of enforcement personnel under your supervision. If you do not provide the direction and management oversight necessary to monitor and evaluate the work of personnel under your supervision, they may not know when they violate Agency policy and need to correct their actions.

The Assistant District Manager for Enforcement is a prominent position. You are recognized by mine operators, miners, representatives of miners, and MSHA personnel as having in-depth knowledge of the Mine Act, MINER Act, implementing standards and regulations, and Agency policies and procedures.

You were on notice of agency policies and procedures. In your position as an Assistant District Manager, you are responsible for the quality and quantity of work performed by your subordinates and for ensuring that Agency policies and procedures are followed. You were able to correctly recite MSHA policies and procedures to the IR team when questioned on these matters. Yet you did not take corrective action when it was evident your subordinates were not carrying out their official duties in an effective manner.

I have considered your performance ratings for FY 2009, FY 2010, and FY 2011 that were 'Highly Effective,' the lack of any prior disciplinary action, and your approximate 28 years of federal service at the time these infractions occurred. I believe this proposed seven (7) calendar day suspension will promote the efficiency of the Federal service.

You have the right to respond to this proposal orally and/or in writing and to furnish affidavits and/or other documentary evidence in support of your reply. Any reply is to be made no later than ten (10) calendar days following your receipt of this proposal. Full consideration will be given to any reply you make.

The deciding official in this case will be Ms. Patricia W. Silvey, Deputy Assistant Secretary for Operations, Mine Safety and Health Administration. Any written reply you make in response to the reason and specifications, as well as any written request for an extension of the reply period, should be directed to the attention of Ms. Silvey at the address below.

Patricia W. Silvey
Deputy Assistant Secretary for Operations
1100 Wilson Blvd., 23rd Floor
Arlington, VA 22209

Confidential Agency Document
DLB-001555

MSHA0014

4

If you wish to make an oral reply, you should contact Ms. Nancy Crawford, Director, Human Resources Division, at 202-693-9808, to arrange for the time and place for the reply.

You have the right to be represented by an attorney or other representative of your choice, unless such choice represents a conflict of interest or position, unreasonable cost to the Government, or the Government has a priority need for the services of an employee who wishes to serve as your representative.  You must indicate your choice of representative in writing to Ms. Crawford at 1100 Wilson Blvd., 21st floor, Arlington, VA 22209.

As soon as possible after your reply is received, or after the expiration of the reply period if you do not reply, you will be notified in writing of the decision in this case.

If there is anything in this notice concerning the proposed action that you do not understand or if you have a question about the process used, please contact Ms. Crawford.

You are requested to sign and date this memorandum as evidence that you received it. Your signature does not mean you agree with the content of this memorandum. However, your failure to sign will not void the contents of this memorandum.

I acknowledge receipt of this memorandum as indicated below:

*Lincoln L. Selfe Jr*          *[signature]*                    12/5/2012
**PRINT NAME**          **SIGNATURE**                    **DATE**

Confidential Agency Document
DLB-001556

MSHA0015

122K

Don Petrole 13 Aug 2012

① Memo — request for add'l 30 days
~~question~~ ~~for~~ time

TRO → r

Hugler had some
issue w/ that,

Confidential Agency Document
~~PLR 001557~~
MSHA0016

#3 these to 164. 3 actions of 80 does not
#3 we bang buck. give most of go into
OPF

21 Aug 2012
UBB — disciplinary actions

(1) coal admin — letter of counseling
written counseling w/ a _plan_
2nd for take care of _some of actions_
Week of mentioned
September — how operational & institutionalize
draft for @ pick out three areas where
begins to look Kevin sets milestone as to how
things will be corrected.

Supervisor 14 days or below — no right of appeal to
MSPB
appeal — file an administrative grievance
(could go to OASAM)


PS to Kevin
Kevin proposing official for all under
him (PS is deciding official)
admin appeal to Joe, can be
re delegated to me (by memo)


Proposing #   w/ mitigating factors,
a deciding #    15 days
1. Dep Admin — 30 days w/ mitigating
14 or below, 15 days
2. ADM for enforcement 30 days to 14
or less

14,5°

MSHA0017

What specifically are the infraction

22 Aug 2012

Conversation w/ Sydney Rose

URB issue

I can move about 25%

how can end up w/ 3 days (exclude weekend)
Sat, Sunday, Monday + therefore
employee only loses 1 day of pay)
after considering the totality of the
circumstances, including mitigating factors,
the employee's ~~information submitted~~ on appeal,
and ~~the mine~~ operator's conduct ~~in ...~~

I ~~also~~ I have decided

All of the investigative reports
found that ~~contents~~ MSHA didn't cause accident

23 Aug 2012

and the employees'
actions did in
no way contribute
to the mine accident.

Conversation w/ Rosy Rooney;

① Question of who provide proposed decision
Maybe PS to KS; AO to others (PS Deciding official)
Concern! Keim is part of picture,

② Bring Seth early

Give Jerome some thing

Charlie
① Reprimand

15 Feb 2013 ② Thomas Moore
Letter of
Counseling

Don Winston

③

① HQ 08-58A — needs to be revised

4th category — not clear

Counsel as to when it's appropro
to do
② — not using the checklist
Facts
ⓐ not using the revised checklist
ⓑ District checklist
[or 2 days]
7 days to Says (Dousa
recommends 3 days, but she
can leave live w/ this) 4
Didn't use or file checklist
what he did was not right.

Lincoln Selfe
Spec 3 — Revise policy for AA's + FAR's

Specification 2 — Drops

Specification — 2 days
Give Link credit for using
unwarrantable failure actions.

Confidential Agency Document
DLB-001560

MSHA0019

detail - in

Glenn Petty
Eddie Sparks
Carlos Mosley
Jim Poynter

Desknt people - Darlene
from MNM

Safty Dept    Don Winston 1 day
              Linda (2) days

Link Self

Understand that this is a sensitive issue
I respect the position that you hold to
protect your confidentiality

Questions concerns or any thing that
you would like to share w/ me
now.

Feels like he's been treated
in a disparate manner.

Administrative Grievance —
- 10 work days from
April 3, 2013,

we
decided
to
work
us
ASAP!

Scott Manderville

Charlie: He hired Scott cause he wanted someone
strong in ventilation,

Don Winston 3 April 2013

3 rd

27 days

SR (8-1-Nov 1)

22 Oct 12    Fire boss    7-2

Oct 2

9/30

Dottie
Colvin

Impact Inspections

Call John Howard —
— Letter to John Howard —
— Letter from John Howard to Sec.

OASAM/SOL role — proxy for Hill/public

Table of penalties
what you gave us was not comparable
Put on next
page

Charlie Thomas
Deborah ; down to two or 3
Greenfield

Possible disconnect ➡

We're going to hold you to a higher standard
Correction of some of systemic issues,

Charlie —
include certain things in the
decision, Remedial action; Look @
dashboard & identify areas, to
use that designed to alert
you of deficiencies in priority areas.

Confidential Agency Document
DLB-001564
MSHA0023

Meeting w/ Seth / Nov.

Kevin: Remedial actions, i.e. corrective
actions in FY 13 performance plan

Charlie: Remedial actions in FY13 perf. plan
re: dash board.

Charlie

① Kevin —
   Letter of counseling
   — lack of mgt oversight. Although He
   relied on Charlie more than
   ① Too wet to sample (rock dust
   computer application for tracking) didn't
   go back
   ② potentially flagrant — didn't review
   ③ pillar stability analysis —   director
       roof control plan.                systems
                                         those
   Remedial aspect - 3 things in his FY13 perf. plan  3 things

② Charlie
   lack of supp mgt oversight. Didn't
   — flagrant
   — pillar stability analysis
   — using checklist for approving roof control plan
   — consolidate ventilation and methane and
   dust control plan into one.
                                     Fe the
                                     office
                                     reners
                                     ng m

③ Lincoln self
   — lack of mgt oversight, as evidenced by
   — flagrant
   — Inspection Report Entry (trainee) expects
     traveling alone
   — not overseen Field and admits Review of accompan

Confidential Agency Document
DOL-B-001565
MSHA0024

drafting Q's + A's — {validated details about action/ind/ordered.
{no details about action/ind/ordered.

{Does this mean that MSHA caused UBB disaster.
{Does this mean that I will be punished.
why wasn't this done aft during my 10 perf. review?

Aleg
Brian
Kennedy,

Seth's concerns:

messaging within MSHA + outside of MSHA

Punishment for performance:

Seriousness threshhold we have to surpass.

Seth: going significantly below 7 is going to be
a problem — deciding official has to come to conclusion
oneself.

when I get to mitigation, have conversa?
w/ OASAM/SOL.

4 business days, work days.

Joe

- Timing
  - ~ next week
  - ~ 10 day appeal w/ leadership, D 4 + 12,
  - ~ discussions
  - ~ All hands meeting.

Audiences

OIG                                    Internal MSHA discussions
They're getting pressure from Hel,     ①Respect for privacy
Nancy to handle.                       ②What to say
                                       ③DOL as a whole
                                       ④Wait to see what
                                         reaction is.
⑤ Q's + A's or talking points

Dana Payne
Affidavit

5 Nov 2012

Charlie Thomas —

100% — getting that done w/ so many trainees,
all his colleagues got HE or EX on
Result 3.

realignment + strengthening of existing
functions.

Timeline for implementation

Nancy Rooney

(1) List for Cabinet Affairs

(2) Letter to John Howard

Good News

Proposed actions in UBB/
OIG - Check back with them when there's a final decision

Les, Nancy Ruiz Com

Heidi

Fire boss          19 Nov 2012

1. RTLB - Evaluation
   - Aong, Develop time frame (Dec),

2. Wahlberg letter - cleared thru DOL.
   Kline letter - awaiting WH approval

3. Corrective Actions — must be vetted
      (3) Things that we don't need,

   - Inspection hour per mine - skyrocketed
   - sending inspectors out of Ky to WVA (cause
     they have nowhere to go),
   - over age of inspectors
   Russell Riley —

4. Coal Mine Rescue Contest —
      - have we sent material to BCOA ?
      - MOU  draft
      - list of funding items
   ($5,000 deposit due by Dec 6),

   John Howard letter (IPA)

   NMA to take over mine rescue,
   Call Bruce.

      UBB disciplinary — Next week
   Impart inspector
   - 15th of Nov

(Transcripts)
They all

UBB Disciplinary actions

1. Donald Wingtore –
A. pillar stability analysis (ARMPS or
(ALPS)

B. Checklist –
all of the information req'd by
Checklist was provided

2.

Confidential Agency Document
DLB-001570

MSHA0029

Hard copy    7 Dec 2012

UBB Discipline Conversations

1. Don Winston — out X130
      left message

2. Tom Moore    X 119

3. Link Selfe —
      copy of your transcript

   Mail to you at office

In the post — accountability
reviews & peer reviews, Put for
corrective action programs,
Internal Reviews — some thing —

— Not gotcha

PIL — reckless disregard — no

2 days

Confidential Agency Document
DLB-001571                                    MSHA0030

Tuesday 12/17/12

3:18 pm

Conference Call Day Before trip

Jim Blair, Donna Krammer, Silvy, Sydney Rose, George Fesak
monique notme

Monday 12/17/12: Silvy: Jim, Donna, Sydney
I spoke to the employees I spoke w/
Rink Selfe MSHA has done review accountability etc.
PEIR reviews. Also stated no one has
ever been punished before. Accountability
report didn't do all they were suppose
to (statistical targeting) mines that are
slow.

per Pat he is going to make that a
part of his appeal
with respect to performance all prior
to UBB explosion. More than 2 years
time period. (trouble spot)

Sydney Rose: These are issues you are
going to look at. (mitigation)

Silvy: you all think about these 2 trouble spots.

Sydney: Below 15 days cannot go to the Board.

D. Krammer will have administrative ~~action~~ Grievance
rights. Can go to AS Main designee.
They could ~~stalk~~ grieve to AS main (your supervisor)
& even though you were the deciding official
Alot more latitude for Non Bargaining
Grievance Decision would be the final decision
EEO Challenge can go higher outside DOL
Could file EEO complaint (gender, age)
ex: Different Age or race can show no
decisive has been

Confidential Agency Document
DLB 001572

MSHA0031

Jim Blair: They don't have MSPB rights
As long as it was not discrimatory

To Favre
1.) Copies of Letters (Monique)
2) IR- report (George)

Notes  12/20/12

8:00 Am  Interview    Winston

Silvey: were here as you know because
of the results of disciplinary action as I will
be the deciding official. You indicated to
me you wanted to present you.

Don Winston: Given extension to Jan 18th I would
like to send you a written argument.
I am prepared to give you my mitigating
circumstances. Intend to give the same thing to you.

Silvey: Send to me when you feel comfortable.
By Jan. 14, th

Winston: I am a little nervous I might
forget something here. So I will follow
up w/ a letter.                                    (Specifics

Winston: in order first of all I would
like to: 1st _____ issued May 29, 2008
talks about criteria when a plan is considered
complex if a plan follows any one it has to
be sent to TS.  memo came out June 5th
the way I understand this memo if the
roof plan meets any of this criteria
once it meets this (2 criteria) Can't meet
one w/out the other. Once I determine
it meets the criteria 2nd pg. on memo
does include Pillar stability analysis Request
from Co. & Send DEB-001574 for their review

MSHA0033

memo Approval of complex and/or non typical
roof control plans & amendments

Winston:   Don't want to address the ~~Appd~~ post pillar
much 2 reason why it was addressed
he reads the memo. Want to emphasize
this is talking about retreat mining.
~~the should de~~
ALP is a pillar stability.

Based on memo I did not think it required an
analysis.   no mention of ALPs (refer to memo Dated
June 5, 2008 TO DM
From Strickline

mention ALPs on second page
See (C) of memo But not in

my argument in order to require this
see memo it has to meet this
its highlighted ~~ften~~ if met it would
have been sent to TS (never sent to TS
cuz I never felt it met the 4 criteria
if don't meet this the second pg. does
not apply.
Highlighted ~~what the specifically~~
parts in the memo

refer
two

PIL         Other criteria at the discretion.
Dated
may 29, 2008   NO I OG V-2 (Technical Support Assistance
in Reviewing Roof Control Plans)

Confidential Agency Document
DLB-001575

MSHA0034

Other districts may consider a plan typical
As D-4 may consider it non typical cuz multiple
seam mining is much more common.

Winston: When I first received the
PIL I call Joel Sabostic/TS I Asked
him about that. Every miner in this district
has this he recognize that Based on my
experience another district might consider it
typical other might feel non typical.
If I was comfortable I did not have to
send to TS. Shows an e-mail
where they were have a mtg w/ Districts
& Joel repeated refer to highlighted area.

During that Conference he recalled our
discussion & repeated it some may have
considered it typical As D-4 will not
consider it non typical. Joe & Chris Mark did the
training.

Winston: Otte I am a professional engineer I have
experience a master's degree in mining. worked Before
MSHA all that timing in engineering & 13 year
as chief (Roof control) came to MSHA 1993
& 1995 came to roof control At time of UBB
I have over 10years of roof control I have
deal w/ multiple seams If have a good idea
when it may or may not be a problem
I am referring to multiple seam
mining. Different districts have geological
differences. D-10
Chris mark talks about coal mine roof
rating (CMRR) goes goes from zero to 100
he recognize

Confidential Agency Document
DLB-001576

MSHA0035

<u>Winston:</u>

I would say the majority fall 45 to
65   45 is low end. Why we my
pa Be diffrent.

• Most of D4 fall into 45

UBR was

Mike Gona uses 51 for UBD

Show roof control plan: Closest
mine above them on the plan is
175 ft.

Based on my exp perience I did not consider
175f (unused hias data to Back it ups)
→ ma burden to trigga this. mine had Been
operating sent 1994 (15 year) that is when the
first roof control plan was Approved.
Operating 15 year. I been to long wall +
tail gate. Did not see where multiseam
seam caused any problems

D•U
Crandall
example

OIG listed 26 mines as a sample
reviewed 26 mies Note D-4 + D-10
seperates just sus an exacise went
to see 175 in a burden them where 17
that pretty well saids what we have as
multise seam mining in D-4.

Appendix K (informal Review Report
mike Gona (TS) he did 4 tables
I like to point out he disceces,
discusses ALPs he reads Appendix K 4
Less the required stability analis ALPs

Confidential Agency Document

MSHA0036

Continued 12/20/12 Interview

Don Winston: When conducting an
ALPS evaluation you could have
an adequate tail gate size the opposite
can occur. See highlight Appendix K.
just tells how ALPS works in works
with the type of roof you have.

All my time here we never required
an ALPS stability for any of them.
I have after UBB But not Before (ALPS).
We are only required to TS if it does not
meet the criteria.

They met the criteria. I felt like I was
meeting the criteria.

K-4          I wanted to point out this is table 1A + 1B
Internal     was generated from history 1A
Review       this is pure ALPS the calculation do not
Mport        take into consideration any ALPS.
             point everyone the stability factor is low
             even though multiple seam action is not
             considered in the table.
             Shows a table that has multiple seams
             mining. 3 are not low
             reason Being cover is less this does take
             in consideration over mining. over mining
             or not stability factors are low -
             particularly point to anaylis active longwall
             Cross cut 71 done By mike Gona.

✗  Multiple seam interaction did not cause these pillars
   to Be low  Confidential Agency Document          MSHA0037

DLB-001578

AMSS (multiple seam mining)

PCMSS Anaylis of this. inaburder was

takes ALPS program

2 modes  one for ALPS (Longwall)
         one for Arms

~~Ateis you to press~~

pt 77 Anaylis mike did.

Amss looks at different conditions
Green good red real Bad. Anaylis said
major interaction is unlikely. suggsel Critera
Saids 76ft.

Using this to determine my decision
making my experience

Anaylis from Mike ~~Greer~~ Gauna (TS) done for
this Report. It was the Back up.

Silvy: make sure this is attached.

For most part that is my arsunnt
one or

Both DM + ADM received that (June 5, 2004)
memo + they Approved that Plam
~~Reiter~~ Both of them sised off on
    the Approval of the UBB plan.
with no problems.

Confidential Agency Document
DLB-001579

MSHA0038

12/20/12    Don Winston

Donna: what is the Standard office practice on the plans:
Winston Would not have Been approved would come back to me.

     When we have a transmittal sheet w/any
approval starts w/specialist FO sup/ or
F inspector then me then to ADM tech +
enforcement + ADM + DM anyone of them
would have a comment finally DM would have
approved.

Donna: practice would read the plan or just sign and
     pass on?

     Winston: It would have come Back if not
     approved that is the common practice

     Winston: If It did not meet the criteria
this other stuff would not apply.
Once we determine that criteria it goes
     to TS we do not review complex or
non typical it goes to TS. Again if the
first one did not apply then the second one
would.

     Sentence that came to saw what your
practice was in the interview. I did not
explain it well.
That second one, we dont review them
we send them.
APM Feb. 20th partial pillar (massive collapse)
still retreat mining ___ when we in
___ ___ ___ 175

MSHA0039

we issued them & citation we did not
know that meant renivene we thought
it meant AMD). That argument did not
fly & they had to pay. (Coal Byrd min)

Stoceal.

Did you require any operators to submit the
results of the stability anaylisir he said ARMs
only altmough we do now.
Any operators did not require to submitt ALPs

Donna: When you were talking about you called
Joe Cybulsky when PIL issued re:
multiple seam mining did you discuss w/ADM
or DM? Don: No
DB: when it came up did you mention
to anyone when it come up? GOD
What about HQ? Don: No I don't do that.

Specification 2: referring to to IR report
D-4 Chk list.

Did not   As I understand the second specification
will Ck list   say we did not do it did not were proper
+ the proper   form it is true I did not do that.
form   But I want to add my statement. I was using
the original CK list. e-mail sent to Jan 27, 2005
to AP + DM. I was continuing to use the
original chk list & don't know why it could have
Been my oversight. (original one that was sent Cuz
Did not use this? 226 227,   that is the one came out of Arlington)
our own ck list goes above & beyond. Using ck list
that originally came out of Arlington. Agett

MSHA0040

Continued 4-6-12
12/20/12

Don Winston:

I was not aware of those new Ck list
that e-mail was sent to ADM & DM. I cant
say I did or did not get the Ck list I can
only say I was not aware of this. It would
have sent by Klim. he may have made a copy
or forward I can only say I was not
aware I was using what I thought I
was to use the original out of Arlington.
Again I am feeling here out & putting
~~them out~~ I am attaching Ck list w/
Plans. Again they were not Being sent Back
to me they were Being approved.
Cheither Ck list were not in the Base plan.
Don: The only thing I can answer when UBB
it happened they started requesting I looked at
them I did complete them But for whatever
reason it was not in the file.
~~I do not have the Ck list that was submitted~~
W the items were in the plan.
The plan included the items were in the Check list.
It's obvious that I used a Ck list to evaluate
the plan you can see where I noted.

Plans were not there I could not find. Ck list
~~that~~ was not w/ the plans.
I was using the original Ck list that came
from Arlington for UBB that is the checklist I
used but I could not find it.
I did not require them to complete ~~them~~
the Ck list but they have their own Ck list
that go above & beyond that they keep don themselves
I complete the Ck list

Confidential Agency Document
DLB-004582

MSHA0041

Silvey: Do you have a copy of which your specialist used for the Base plans

Don: No. once I did learn about the proper ck list I did start using it ~~too~~ I learned about it on Jan. 2012. from a conference call w/ All Supervisors ( roof control supervisor & Johnny calhoun & Chris mark ) & the check list came up

Johnny sent me all the forms now I am using this & so are the specialist.

Silvey: Did your specialist know about this?

Don: no

My point I was filling out the checklist I G was satisfied. Again I am filling out these ck list & no one is telling me this is wrong.

Roof Control Specialist were using this only Ck list As a guide. for them to go above & Beyond. Then the base would come to me to fill out & onto others to approve

Silvey: Send me an example what P.4 roof control Specialist were using as a guide.

Donna: want to add anything else.

Don: I will repeat All this time I am filling out this Ck list no one tell me I am doing wrong.

Confidential Agency Document
DLB-001583

MSHA0042

Continued · Don Winsdor 12/20/12

Donna: Anthony coming on w/ you to help Mrs Silvy reach a decision?

Don: NO    I think I have covered all this.

12/20/12               2:50 pm

Interview Lincoln Selfe, Jr

Silvey: As you know this is yours to present your oral
issue so proposal displinary action you
have the option to present your mitigating factors
you stated to me you wanted to present
this orally & you wanted writtends.
In terms of the appeal you so asked for
an extension yes till Jan. 18, 2013
per Nancy Crawford. Any additional info
you can send to me by Jan. 18, 2013.

Lincln: Allegation in there from IR report
no evidence that MURA employees cause the
accident (Reading IR report)
Fiscal year 09 most cited at that mine
was unwantable failure. issues so only
findings + facts in IR report are inconsistent
Specification: Flagrant violation came out
in 2006 you can have a reckless violation

Inspectors had little problems with the reckless
violation If it's unwarrantable.
2 types - repeated failure that is when the
inspectors has the issue. 2 or more in
the last 2 months meets flagrant
no tracking for inspectors. At the time
of UBB nothing was in place other than a
memory. For the inspector he could not
possibly remember this other than a memory.
I still a problem with a flagrant- the issues
are for a specific hazard, alot of research
still needs to be

Confidential Agency Document
DLB-001585                                          MSHA0044

Silvey: When you say they still have problem who? Line → MSHA So many different things in that ventilation plan.

Silvey: Even now post UBB we put out this tracking system policy.

→ Lincoln: Yes there are problems w/ interpretation showed an example: Read off the IR report. Cyclone picture spices naturacurds pg. 2 of report In this case your proposals describe me according was present in every district. Copy. See pg 2 of IR Report

Silvey: At what point did you inter act w/ SOL? not me per Line the DM does. I recommend then DM puts a package together & then SOL reviews & sends to Administrator to cool Stricklin. Charlie Carpenter makes final recommendations

Silvey: Did you go Back & look at any were recommended which at the time was were sent to DM

Nationwide had trouble we issued 600 were counting on the inspectors memos nothing was in placed at the time of UBB.

Confidential Agency Document
DLB-001586

MSHA0045

Continue Lincoln Self Interview
12/28/12

Linc: That flagr it now that we
have issue (system in place)

Issue about training on flagrant
re: I had not provided training. or remember
~~having training~~ Mact 200
Hand book Traing was received
I have documented for 2 mt Hope
Staff mtrs training was provided.
(We have the documentation) Memo was
sent to all. See Attachments.
July 30, 2007 staff meeting.

~~Bullula~~

Specification #2 (ROE trainee mt. Hope
I gave directive to Supervisor & Inspectors
trainee was not to be left alone at
any time. When IR asked would you
believe trainees were conducting
Sent directive & went w/them.
No system in place to alert me that they
were not following. For me I only review
Inspector notes, It did not show up
I had no knowledge of this occured, had I
know it I would have taken corrective action.
I am being held accountable what was
sons.
Special Assess unlawful knowing willful violation poss/th
are the only ones I review - part 3 policy has to
present a high ...

MSHA0046

policy to have Linc:
need
people    It has highly likely to occur
at        & meet criteria to meet Cuz does not meet criterias
          that is a tool we do not set to use


Silvy: you said you had given the directive
how did you set it to them.
Any written? Linc: I don't recall But verbal
I talked several times at the staff
mtgs.
When I give a directive I expect to
be carried out. I travel w/ them &
had no reason to believe this was going on.
I travel w/ sup 36 times a year.

Silvy: Accompany activities you travel with
an inspector?
Linc: trainee/supervisor/ Inspector I
traveled with them each time everything
was done right. No trainee was left alone.

Silvy: Field activity review
Linc: I only look at serious paper.
Field office sup looks at those & he did
not tell me anything about it. I was
shocked when they told me post UBB.
4 field offices before & after.

Silvy What kind of discussion did you have
when grew found out.
Linc: I Gave the directive I don't

Confidential Agency Document
DLB-001588                MSHA0047

Continued Linc. Interviews
12/20/12

**Linc:** recall writing it. I thought about taking
disipling action But I didn't. we are
So much Under stress to get our mines
done.

## Specification #3 Read it off the memo

Not a true statement a supervisor cannot
travel w/ an inspector to all mines.
Agency policy what Supervisor is Suppose
to do. Not a true statement.
I am not familer w/ any tracking sheet
other than the one on Coal W drive to show
we have Been at all the mines.

**Sitey:** Don't you have ITS.
**Linc:** yes But it shows we have coverd all the mines

**Linc.** Allegation saids covers field reviews
your saying I did not establish agency
gools. There is no agency tools to go By.
W Drive it's called mine visit.

~~Known Seen + I covered~~

Field office supervisor applied for disability
retirment on May 19, 2009 see ps. 3
he was on sick /AL and leave
w/out pay see ps. 3 they probably
did not K
No training provided Read ps. 4 or
Li written

Confidential Agency Document
DLB-001589

MSHA0048

<u>Line:</u> I am only required 2 review not required to review. the DR team reviewed many documents that I never seen + not required to do.
Seep g 4   Once again no training required developed or provided for A PM relative that we deemed so important.

<u>Sitvy:</u> Do you have any written on

Lina: B who did some it

<u>Line:</u> We weren't how underground, still they were doing an App.
This something they determine to be a national this is not something specific to me

<u>I perfor</u>

<u>Donna:</u> You said you were told you cAnt do any training for the
<u>Line:</u> Acting Cute it would look like pre select. our Administrator officies Sand Humpfry.

<u>Donna:</u> I ~~told me on~~ Anything prevented you for bin more then one

<u>Line:</u> Time

Confidential Agency Document
DLB-001590

MSHA0049

Lincoln Seite
Interview

Linc: 2007 Acted D-3 I thought
about all these events. I discussed how we
train on all these issues. Part of that
discussion how to do the training to train.
Had training been developed we would
not be going through this today.
D-4 is the largest District in MSHA
were using this now as we Gotcha ya.

He Read pgs 6 + n

Silvey: We appreciate the importance you
have done on mine rescue team. I recall
the regulations we put in place.

Linc: I have been so dedicated to MSHA
& proud what I have done. This letter goes
against as well there tho on my face

Lost site of the MSHA's mission this is
so politically driven. It's driven By politics
and politicians. You all picked issues that are not
true so just so you can go Back & tell the politicians
you discipline me. I have 30 years I
can retire but But I still have passion left
in me to help the miners. That is my
passion what is this doing By suspending
me nothing of this helps the miners & me
By suspending me does not help at all.

Agency & the academy provided training.
I did provide training

Confidential Agency Document
DLB-001591

MSHA0050

Linc: We appreciate your information
& you have till Jan 18, 2013
If you have so any thing you want to
supplement Call me send it to me etc.

Linc: Since On Dec. 5th I received this
letter I can't concentrate & I have alot
to get done.

Donna: you mentioned there was a period of
time when you were in Colorado.
Any other mitigation factor in close proximity
Any issues any medications that would Mrs Sihy need to know.

Linc: I take 10 mg lipitor a day
that's it not other health issues.

Linc: UBB & DU got to stay on team

I am 58 years old I can still help the
miners & protect the inspectors.

Thomas Moore Been off with her Back
Other supervisor trying to keep up

Linc: Certification of EOI: It is going to
Be a virtually impossibly. So many mines &
So many reports So we can't get the mines day
& make sure miners are protected.
Can't certify until reports are done &
will not be complete in MSIS. Said was need
to be done within the 10th day of the
next quarter, every month

Confidential Agency Document
DLB-001592

MSHA0051

LDC: Continued 12/20/12

LDC: Thomas Moore has Been go in
Mt. Hope. I can not afford to take one
of his Inspector out to act.
From Chuck selected for a 14 here at the
academy. I am going to come out like
Same situation in Mt Hope & somerville
place Mt went on. were doing the best
we can do

If I am being discipline for what you
have here than you need to disciplen
all MDMs in the country.

Confidential Agency Document
DLB-001593

MSHA0052

Dec 20 2012

Interview Thomas Moore

Silvey:   First of all thank you for coming in you got a proposed letter of disciplinary action you have a right to appeal & provide mitigating factors to support your appeal. You indicated I want to speak to you in writing & nothing written.

T. moore:  Today I just want to speak orally no additional time.

Donna:  You can reply in writing & oral

T. moore:  I just choose oral

At this time I read it over & over I understand all of that. First want to say who I am & what this to me: All my life I have been committed Vietnam Vet Father and brother were in the coal mines. I believe as I supervisor miners I believe in doing the right thing & treat people how I want to be treated. When I took this job I took it as the health & safety of miners I would never put or jeopardize the health & safety of the miners. My performance is exemplary I repped every coal mines & I let them know. I took this supervisors job 2006 & went to Mt. Carb good report & I felt like I helped them & did help Specification my responsibility or lack of where a _____ _____ when I should g

Confidential Agency Document
DLB-001594                                                    MSHA0053

picked it out. I understand what
I R team was. All miners knew they
could not travel alone I made it my
business to travel w/ them. The paperwork
AP's FAR's everything was in ⟨Cabes⟩
10 inspectors & reading notes all different
travel writing & read every note & sign off on
every PIL, plan, perform duty AP for
mini visit lack of training I had I knowe
I did well. When I read this said
I failed to comply w/ PPL etc. then an
6 Book 6 inch thick I don't believe
anyone can retain that anyone can
read the uniform mine file.
Both of those men Brown & Sismon
Both were trainees. I am committed
to my Job.
Specification ~~1~~ Said I inadequately reviewed.

Many revision that come thru uniform mine
file. I had Been in that position for 2 months
Jan. 15 as a supervisor I Believe in doing
the right thing. I feel I was a help &
was making a contribution. No one who
feels about health & safety of the miners to
feel for the miners & given my Best I
have not compromised their safety.
The words used in this memo were
not correct.
The reason I took the job for someone
to do this than who Pick & use these
words in TR and have always Challenge

MSHA0054

Interview Thomas Moore
12/20/12

+ respected responsibility. I am an
honest man + Believe in honestly.

Silvey: First specification reads to Thomas

Thomas: we were not conducting 103(i)
Spot inspections.

Silvey: March 9 you inspected the tail gate
(Reading Specification 1).

Is that correct what you told in
yes that is correct.

Thomas: I reviewed the uniform mine file as
that particular time there were numerous revision
& upper mgt. was not aware of. The up-to date
material was not in there at that time.
I walked w/ keith sigmon that day
& we investigated & when we had a
map + followed to find out the problem
at that time the men were with draw-n

Why was air 3 Regulator was in place
that should not have Been.

Silvey: I am understanding the revision
made it confusing yes

Thomas: Correct

Silvey: with repect to two routes to support
when you determine with a way join on with

MSHA0055

The ventilation? Did rootsupport appeal ventilation. Thomas he was not ventilator, It was the regulator. All men were withdrawn + Inspector + myself. Doing this we carefully found out any it was not moving. If there been two rows of pack it still would not be moving.

Silvey: Would you review long control plan Jan. 28. You did not put partial.

Thomas: If an inspection often times pulled for 103 spot they may review ventilation plan & put partial review.

Silvey: purpose going for on 103

Thomas: I put them in the middle of the guards + comments had been assigned. None had a supervisors they were acting.

Thomas: we had one of the busiest field office I mine, better than we were over whelmed its obvious we broke off in D-10 You can overlook the mine fire loss. you had CRP goin name it. Same revision with ventilation plans.

Silvey: they were not taking old out to replacing new

MSHA0056

Continue of Thomas Moore   12/29/12

Thomas: You are know really what to
throw away as far as revisions.

Silvey: I want to go back to 103
On some other ones you went out 103
Spot inspection. I can see you look'g
at the ventilation plan. Do you
ever write partial review when you did uniform
mine film?

Moore: No never did that.

Silvey: When Inspector Keith went with you
He would have to look at uniform mine film?

Thomas: I don't know how he did it I
came up with the event system they
would sign the sheet.

Silvey: On march 9th when you & Sisman went out?
what would indicated a sign in?

Thomas: EO1 he would indicated that sign
By it or

Silvey: At the time you were a supervisor in
training, not the supervisory.
Some training have you found it useful?

Thomas: yes just to see how the different
district do things different. For instance
the event sheet, the last training event sheet came
up. we showed our example

Confidential Agency Document
DLB-001598

MSHA0057

Moore: Not all have minin & experience as they should.

Silvy: Back to the notes we still have requirements to do the notes?

Moore: Yes you can do the notes on the computer. There are some notes you really need to cite.

Silvy: What do you do when you have an inspector who cannot write legible.

Moore: I tell them to take time & write legibly. When you have 25 30 pgs of notes it hard to understand.

Silvy: Back to Specification 2. The 7000 K form must be the one they use for the notes.

Moore: Yes

Silvy: How long had Brown been an inspector? Brown had been AR But Vandyke not.

Moore: All inspectors had notes to be reviewed & some pass Jan. 12th & was a challenge to write into an Order.

Confidential Agency Document
DLB-001599

MSHA0058

Continued Interview 12/20/12

Silver: How long had Vandyke Been an inspector?

Moore: He is Back in my group. With what I dealt w/ Jan 12 to Jan 20th my inspectors knew they could not travel alone. They were instructed it was policy.

Silver: They knew they could not travel alone how did you instruct them?

moore: They were ~~signed~~ assigned an inspector. I did that orally (instructing them not to travel alone).

Silver: ROE not part they were not to travel alone at all.

Moore: no you do not travel alone.

Silver: If ROE were going with regular inspector, you must let the ROE inspector do it.

Moore: Charlie Thomas + I worked together. I would say yes when she would Ask question this is to see if he has AR Card

Silver: In Mt Carbon did you have any occasion were any ROE engineers traveled alone

Moore: None

Donna? No questions have covered it

Moore: I respect the job I am
doing & the position I am in.
I have alot to offer the young inspectors
& take my job seriously. I would
not teach cut of doing things. I say
all the time do the right thing.

Silvey: Do you think the uniforms
mine like put together Beths? post UBB

Moore: I think electronic mine like
is better. every time is hand copy in
our district I think electronic is the
way to go. Uniform mine like could
be deficient. I feel like my
record speaks for it self. I issued alot
of meanum violation papers & was at the
top I was rated exemplary 3/4 times
before I took supervisor job.

MSHA0060

Gpls in Beckley 12/20/12

Remaining Cections Items 12/20/12 prior to

1.) Talk to Charlie (monigues) 1st 4/8th
to determine if the issues to present orally
in addition to in writing extension Jan.1st, 2013
COPY to George Lincolns written reply.

2.) Lincoln - take Lincoln written reply
+ go thru the proposal (George)
Line shoot as down on every specification

3.) wait on Winston written reply + George
goes over writer reply + Match up to letter.

4.) OK to draft enough to draft out for Moore

5.) 18th supplemental info comes in George
Can go over + Match up.

6.) meet in Jan 1st + 18th

Donna recommendation of the most letter of
reprimand least a warning.

7.) For Grievance process for outside has to be
at or above your level. Info possible Rich Fairbox

8.) Donna will look at Lincolns response
+ then look at the proposal letter

9.) PAt. will discuss further appeal with As Main

Confidential Agency Document
MSHA0061

Options

Lincoln: Send Low Level Suspension
if George looks thru Selter reply one & finds be one
were wrong still issue a proposed &
Send him to training.

MSHA0062

Confidential Agency Document
DLB-001003

Charlie Thomas notes 1/10/13

① Silvas

Charlie: Whoever crafted this memo it
was heavily handed & stern failure to
carry out official duties is pretty broad
talk about obstacles I have to have
to get into the system policy on flagrant
dependent on getting support from SOL
enforcement action flagrant Kraus & I agree
if we need to answer/support
④ from SOL matters as a team. I did not
want to say
I don't think I should shoulder the
flagrant ~~~~
No computer system I think was the
most experienced. Some of the
Jamison they use to issue a D2 order
it's not there choice to make no
support from SOL.
D-4 largest Coal District 4 that decision
to split the district very difficult to manage
the more inspection another decision out of
my control another decision
✗ key indicators that I did not provide my
supervisor should have a voice or opinion
on what kind of job I did. My biggest
problem no one ever interview from WSB
internal review team everyone else that was
disciplined were allowed to be interviewed.

Key Indicators they decreased in
average an abatement of one in 2 day
Rock Dust prior to UBB I had discussions
w/ Manser I went out West and
Bailey mine + wrote citation went to
macalster

never collected a rock dust survey for a
mine. I was taught by some of my
Best my father was in it the
mine for 27 years It's not like I did
not care about rock dust.

If I am going to be held responsible
for 7 day suspension. I was being
paid for GS-15 pay. I was never
paid SES pay, if I am going to be
responsible I think I need to be
paid SES pus.

Rock Control Plan the inspector missed
it, Superisor missed + ADM.
It is difficult for me to know
every plan, but DM retire ADM retured
+ field office sup was deddused.

Having the ventilation + Dust control
Plan seperate, has always been
like that to pick that out +
say I lacked in leadership
that did not cause UBB to
blow up that the plans are in
two seperate documents.

Confidential Agency Document
DLB-001605
MSHA0064

Continue Charlie Thoma
1/10/13

I have always Been a stern
disciplinary my self example poincuth
EX. When you need a day off we told
him to call him re: Das off—
AL Davis I tried for 2 year to get
him out of his position. Tommy/Hodder
received mets on appraisal. When I came
On Board ~~Das off~~ Actions Concentrate
7 8 and 9 per Kevin. I Participates
in Seminars I Am one person & I
Cannot be in every District. I was
doing what I was instructed to do. I
Am not throwing kevin under my Bus
I was doing What I was told to
do. My hardest sticking point I did not
get interviewed & then these Charges Without
defending my self. I could have explained
I sent Mr. Kline to D-1 he retired.

→ After UBB. Mr Kropp went on a
detail he declined & then retired.

Vacates. Lowest they have ever Been
in Coal means It is improperly Wrote
there are some areas that I supervise
that improve. If you ask any Coal
Operators they will probably tell you
I am an enforcer. I felt George should
have interviewed me I provided Some facts
about the deputy position.

MSHA0065

Silvey: I understand about SOL
did not support some of the things
flagrant.
One question USB- we had written the
most unwarrantable
with the best we had written P-2
Congress had put in the mines act.
Any at UBA?
Charlie: NO — If I wrote violation
after violation unwarantable what's
the use w/ SOL & conference officer
et Junk As After you write something
the inspector will take the attitude
Someone will write it to a 102
if its meets the criteria for a flagrant
SOLA should not have the authority
to do that. I truly believe if we
had ~~got~~ support from SOL we would
have wrote more.

I would rely on a ~~total~~ technical
person, they should have involved TS.
But Bob or Kline let me know we
had these issues I would have involved
TS. He should have alerted Kevin or
TS we would have done something
But they never asked for help.

~~They did not~~
This mine should have been put on
POV, that computer glitch I should
not have been responsible for that

MSHA0066

Continue Charles J. Thomas 1/10/13

Charlie: I am not going for the emotional word to feel sorry for me when you Attack someone I take miners seriously. I worked in 3 Districts & have learned alot from all of them. I have learned a tremendous amount from kevin he has talents It was hurtful to say I did not provide oversight

I argued my people & my subordinates did their job we could not get SOL to support us

Silvy: Did D.Y identify any flagrants?
Charlie: yes they did But not for UBB.

Rejected to have a set of eyes look on this.

Silvy: any particular not work at UBB for a Reason?

Charlie: no I think at UBB They had someone from UBB management come out + intimidate some of these young inspectors. Mgt. played on inspectors emotions a flagrant they pleaded more w/ them.

MSHA0067

Silvey: Hardman & Klim retired detailed
2 months & then retired. Do you
think either of Both were not adequate
doing their job?

Charlie: yes. ex. performance
appraisal what cant do to
that you do your job more effective

I have
notes
in my
planner

Hardman: Got rid of Klim
per Charlie Klim received a HS
performance rating (2009)

→ I will double check.

Silvey: That does not match MEE
they know Klim was a problem

Charlie: Hardman was overwhelming size
of district so many plans he had
impossible task it was just impossible
to do well they review one size of
any district

Silvey: Lets talk about methane &
Dust Control plan. we agreed to the plan

Charlie: Agreed to be combined
the two plans

MSHA0068

Charlie continued 1/10/13

Charlie: Health Groups reviewing
the plans & the Dust crowd.
It did not affect the law.

Silver: might it present the opportunity
that was critical to Dust + Ventilation?

when D P C in

Charlie: For consistency you had ~~resources~~ resources than
were we going to miss something
missing something as for a
inspector they are responsible

Silver: Kline would have responsibility
for the district.

Charlie: yes. UBB was not the
only problematic mine in D4

Lot of plans were weak Kevin + I
Strived hard we focused on other
mines that had other issues. I did
provided oversight at other mines

Charlie: He was not an aggressive
ADM he was more of setting the
plans they or ASK for weakness
Kline did not want any outside help
he shielded problems from the district
we would find out when an order was
written or ____ that their plans were not
approved

Charlie:   The performance Appraisal
I received from Kevin & Ray
was exemplary on HC. If my Behavior
or Conduct was not right there should
have been some type of interaction from
Kevin or you I never had any conversation
that I was doing a Bad Job.

Silva:   proposes discipline Based on
I.R. report & it did not come out
till March 2012 It took a
long time to get the report out
that is one of the reasons for
not mentioning performance

Silva:   you mention you were in an
acting Job which was sort of A
training period. Do you consider that
a training program? Are you
aware that was not SES Candidate
training?

Charlie:   I Brought Kline to Kevin about
my conversation w/ Hardman Kline Being
weak. If I was the full force
deputy I would have had the authority
to move them around I would have
prevented all kinds of permissions. I Could
have moved Kline if I was in that
position.

Confidential Agency Document
DLB-001611                                    MSHA0070

Continued Charlie 1/10/13

Charlie: Kime & Hardman were not a
good fit never saw eye to eye
on the plans.

7 days suspension does not only
affect me it also affects my family.

Silvy: Who were the other active defenders

Charlie: Bentley-, Melinda Pen, 120 days

Silvy: Me you & Kevin need to talk about
AL Davis Letter (Aside from this)
per-to we need to wrap it up in the
next few days

Silvy: With respect to today you know
U.B.B - 86 or 87 Belong to Coal
All do respect

Joe feels the same Russell Riedy & others to
remove steps we did not need
Basically the requirement is to many.

Silvy: How are we doing today? Supervisor Steps?
Am audit in any District

Charlie: Charlie speaking only so no one else
the documentation today technology it would be
much easier do have a microphone & then transpose

MSHA0071

to a report on an 8 hour day
8 hour a day — we need to get to the
21st Century to with the new technology
voice recognition soft ware etc.
we do more documenting then we do
Inspecting. I don't want to Back off
Supervisory visits. Etc

Mine visit leave the same
& Far's should out in half
need to give old aging supervisors some
latitude. I would like to
travel more with my trainees.

Slug: Higher level review

Charlie. were not missing large portions
of the mms.
Supervisors need to work on weak
inspector But not a wide spread
problems.

Schg: I think about ½ our inspectors
have penmanship pro issues.

Charlie: I Argued they should print
This is when modern technology
would be useful.

Confidential Agency Document
DLB-001613

MSHA0072

Donna: Bear in mind I don't
understand that IR likes you & all
do. Could you ask to be interviewed.

Charlie: I asked Kevin he said its up to
Flesent team probably not your actin

Situn: they determined who they want
to interview (IR). Even AS cannot
step in, there is a policy on how the
IR team Acts & does. Policy said Drafts
report SOL, AS, Administrator can
review for accuracy. IR team picks
the people.

Donna: When you sat w/ Handman
& he told you Kline was not doing
this job was that the first time you
heard that.

Charlie: yes I sat with Lewis &
explained we had a plan (Kevin & I)
previous performance Appraisal his name
never came up

Donna: Separate plan. did you know

Charlie: yes know they had a Dust Control
plan. Cave would do parameters

35 years in D.4. had Separate plans
that had no Bearn on the explosion or
surv, power DM ADM you still no product ?

Confidential Agency Document
DLB-001614
MSHA0073

But we agreed to the plan. This had
no Bearing on the plan
Should not had Ben in the
proposed removal

Donna - Talk About Kim Shielding
this paperwork. First time you heard
this about plan

Charlie: No we saw there were weak
plans (Kevin & I) we knew about
Several mines not just UBB we
would you feed Back to the district
Health & Safety Committee we provide
oversight to plan. Kevin & I plan pulled
from each district & reviews all
plans from the district & provide
Oversight.

Silvey: Flasiant we don't have any
written policy we never reached an agreement w/ SO₂

Charlie: It's expired.

Charlie: wanted to Be treated fairly
This is a tarnished mark v my
Career. Look Back on my Career
Career & never had problems
I thought I would have ideas
from Kevin by now - I Enjoy coming
to work every day & have learned a lot w/    Better to
Kevin. I <span>Confidential Agency Document</span>    get coaled
or pretend

MSHA0074

CODE: Who

Silvy: How did you determine
Who was Interviewed:

FSUV: only interviewed District was a Alternative decision
Kevin wuz he was on Site.
→ limited to recovery operations
Because he was on Site.

Set up time for next week

Thomas Moore: warning / training
Field Office Supervisor
we need the dates ⟩

Decision letter could say until we
reach final resolution on this

Confidential Agency Document
DLB-001616

MSHA0075

Notes from 1/24/13 mtg.

Donna Krammer: Corrective Actions Recommendations

Moore: Letter og Warning ~~5 days of~~
~~training~~
Does not go in his ~~OPB~~ OPF (Have to get done quick
— Issue a decision on proposed letter + then a "issue warning letter
mitigate to a warning

2 sep
propal
letters can
be sent
together

Donald Winston — Proposed 7 days down to 3 days
days. Rational Specification 1, could not tell
us specification on the check list.

Lincoln Selk: No mitigation per Silvey Don't agree.
Call Donna when you know where you are + ready to
write a letter.

Charles Thomas: Mitigate to 3 days But
not comfortable w/ that. Can't throw it out
Che has some responsibility.
We have to mitigate cuz I am concerned he
will talk about this ~~et~~ ~~letter or return~~
ex. Retire + go to the media (But intent to
the Govt.). I could make a reprimand
in Charlie's case. Og we do the letter
needs to stay in OPF for a couple of years.
No training in the reprimand But discuss
w/ him.

Administrative Grievance:
Discussing John Moran Career Deputy in Vets
John can make a decision + will support his
decision. Strong man + leader, dealt w/ personnel
issues in Vets. Team player.

Confidential Agency Document
DLB-001617                                    MSHA0076

Silvas:
After Moore's letters lets aim to
get the others. I want to get this
done, Winston/ per Rink I want to hand
deliver + Charlie Thomas I will deliver here.

Rinki per Donna said he does not produce
documentation. Drop Spec I will put you
down to 5 days

Confidential Agency Document
DLB-001618

MSHA0077

Mtg : 2/15/13          10:50 Am

D. Krammer, Silvey, Fesak, mClina

Moore- Retired No need to
do anything. Silvey Called him
before he retired.

Donald Winston: Fesak thoughts Ill Specifications
for not doing the AMS, Be

Silvey: My thought on that memo should Be
done & it was our fault. the memo needs to
Be revised. We should not Be writing him up for that

Fesak  memo permitted discombont poorly
Written & needs to Be rewritten & revised
Next one he is all over the place about orders
the checklist District did not have anything my opion
they Blew off the checklist

Silvey: Clear to me they were not using
the revised checklist. had Been using the
unrevised there Checklist. Any Safety gain
from the the newcklist? If there was no
Change from this

Donna   Take 7 day down to 3 days (For Winston)

Silvey   What if I took it down to 2 days
U am thinking 1 day. We do not want our
Supervisor's doing that when our memos come out we need to do something

Unove considerations
instead of dropping
spec. 1.

Beginning)

Lincoln: Fesar. Reconsider Drop Spec. 1
Silver we can not hold him accountable
For FAR's + AA. Dismiss 3. Revise policy for
AA's + FAR's spec. 3 - Spec. 2 is weak
No evidence. Drop spec. 2.

Specification 1 - looking at 2 days

Charles: ~~Reprimand~~ Reprimand w/ training

Fesar will send analysis to Donna

4/3/13

Issued Letters (Link)
Dec 1843

Silver, proposed suspension was issued to
you. It's taken me some time to reach a
decision. I have taken into consideration all
you have submitted / year of dedicated service to
MSHA. I mitigated it down to a one
day suspension. There are appeal rights in there.
We will work w/ OASAM on the suspension to
protect confidentiality.

Link: Every District in the Nation was charged
w/ the same thing. I am the only one be
charged.

280 same on the flagrants. If flagrant was a
much broader issue then D-4
you depending on my memory, inspectors & others.
Flagrant is very time consuming.

10 work days to Administrative Grievance

Code people time US (non work)

MSHA0080

4/3/13

Issued Letter Don Winston

DOH Winston:

Silvey: process as why were here
today on the decision on proposed
suspension.

1.) Dealt w/ check list + one dealt w/
approving roof control plan.
Added good work cares.

Winston: Appreciate that + I think
this is fair decision. I appreciate it very
much.

**U.S. Department of Labor**     Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



**APR 0 9 2013**

MEMORANDUM FOR CHARLES J. THOMAS
                Deputy Administrator
                Coal Mine Safety and Health

FROM:           PATRICIA W. SILVEY
                Deputy Assistant Secretary for Operations

SUBJECT:        Decision Letter

By letter dated December 4, 2012, Ernest Cameron, Director, Administration and
Management, proposed to suspend you from pay and duty status for seven (7) calendar
days from your position of Deputy Administrator, ES-1822, in Coal Mine Safety and
Health.

The proposal advised you of your right to respond orally and/or in writing. On
December 21, 2012, you submitted your written reply to the proposed suspension. On
January 10, 2013, you presented your oral reply. Also in attendance at the oral reply
were Executive Assistant Monique Molina, MSHA, and Donna Kramer, Supervisory
Human Resources Specialist, Office of the Assistant Secretary for Administration and
Management.

I have considered the proposed suspension issued to you by Mr. Cameron, and all
supporting documentation, as well as your written and oral replies. Considering the
record as a whole, including your willingness to work with a mentor, I have determined
that the seven (7) day suspension shall be reduced to a Letter of Reprimand, which will
be issued separately. This decision is taken to promote the efficiency of the Federal
Service and is based on your failure to carry out your official duties.

If there is anything in this decision letter that you do not understand and wish to have
explained, you may contact Donna L. Kramer, Supervisory Human Resources
Specialist, Employee and Labor Relations, at 202-693-7686.

Confidential Agency Document
DLB-001623                                                     MSHA0082

**U.S. Department of Labor**
Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



APR 0 9 2013

MEMORANDUM FOR CHARLES J. THOMAS
              Deputy Administrator
              Coal Mine Safety and Health

FROM:          PATRICIA W. SILVEY
                 Deputy Assistant Secretary for Operations

SUBJECT:      Letter of Reprimand

This memorandum is issued to you as an official reprimand for failure to carry out your
official duties. This action is initiated for such cause as it will promote the efficiency of
the Federal Service.

By way of background: On April 5, 2010, an explosion occurred at the Upper Big Branch
(UBB) Mine killing 29 miners and injuring two. As is MSHA's usual practice, the
Assistant Secretary directed that an Internal Review (IR) of the Agency's performance
before the explosion be conducted. The details in this letter of reprimand are derived
from issues identified in the IR report.

Critical standards that field staff must enforce deal with the review and approval of
certain mine plans. The IR identified several instances where District 4 management
failed to follow CMS&H policies and procedures applicable to the plan approval process.

1. District 4 management did not follow the provisions of CMS&H Memo No. HQ-
   08-058-A when approving the UBB roof control plan. The Administrator for
   CMS&H issued this memorandum to provide guidance for review and approval of
   complex and non-typical roof control plans and amendments following the August
   2007 fatal coal outbursts at the Crandall Canyon mine.
2. District 4 management did not implement the checklists specified by CMS&H
   Memo HQ-08-059-A when reviewing roof control plans and revisions. Instead,
   the roof control department continued to use its own checklists.
3. District 4 management did not revise the roof control plan approval SOP to
   comply with the Program Policy Manual as recommended by the Office of
   Inspector General in its 2008 Audit report.
4. District 4 management did not follow national guidance outlined in Procedure
   Instruction Letter No. I09-V-03, which specified that separate ventilation and dust
   control plans were to be consolidated into a single mine ventilation plan subject
   to a single review date.

Confidential Agency Document
DLB-001624
MSHA0083

2

At the time of the UBB accident, you were detailed to the Deputy Administrator position. In that position, you shared the responsibility with others in the National Office to see that criteria and methods for ensuring compliance with safety and health standards are properly and uniformly applied by all Coal Mine Safety and Health (CMS&H) Districts. However, you focused your management oversight on Districts 7, 8, and 9.

In reaching my decision to issue this letter of reprimand, I have considered the factors established by Merit System Protections Board case Douglas v. VA, 5 MSPB 313 (1981)

I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. Although you were the Acting Deputy Administrator at the time of the IR report, you were assigned direct responsibility for all CMS&H districts.

The Deputy Administrator for CMS&H is a very prominent position. You are recognized by the public, mine operators, miners, representatives of miners, and MSHA personnel as having an in-depth knowledge of the Mine Act, MINER Act, implementing standards and regulations, and MSHA policies and procedures.

You were on notice of the Agency policies and procedures. In your position of record as the Director, Office of Accountability, you determined compliance with MSHA policies and procedures. Yet, as Acting Deputy Administrator you did not always to take timely corrective action when your subordinate managers were not carrying out their official duties in an effective manner.

As a management official you are tasked with setting a positive example for subordinate employees. You were and still are assigned direct responsibility for all CMS&H districts, including review of the work of the management and inspection personnel. If you are unable to enforce agency policies, the inspectorate may be held to a lower standard of quality work which could jeopardize the safety of the miners MSHA is tasked with protecting.

In reaching my decision, I also considered that the District 4 District Manager, Assistant District Manager, and field office supervisors in your management chain were reluctant to raise areas of concern to your attention; thus limiting your ability to correct all infractions. Although you are responsible for the quality and quantity of work produced by your subordinates while ensuring agency policies are adhered to, I considered that you may have been precluded from taking all necessary corrective action due to your limited knowledge of all matters occurring in every district.

MSHA0084

3

Your "Highly Effective" performance ratings for Fiscal Years (FY) 2010 and 2011, your "Exemplary" performance rating for FY 2009, the lack of any prior disciplinary action in your personnel file, and your approximate 22 years of federal service were also considered.

It is my belief that you will not commit these same or similar infractions in the future. I am confident that you can be successful in carrying out all of your upcoming official duties. Your dedication to MSHA and the safety and health of all miners during your career is appreciated.

However, these mitigating factors do not outweigh the seriousness of your actions. I have determined that a letter of reprimand will promote the efficiency of the service. As a supplement to this letter of reprimand, I will identify a veteran member of the Senior Executive Service to serve as a mentor for you during the period that this letter of reprimand remains in your file. I will also identify training that must be completed. I believe these actions are appropriate.

This Letter of Reprimand is a matter of record and a copy will be placed in your Official Personnel Folder (OPF), where it will remain for no longer than one (1) year.

If you believe that your actions are due to personal problems, I would like to remind you of the Department's Employee Assistance Program (EAP). The EAP is designed to provide counseling and assistance to any employee who is experiencing personal problems of any kind and services are strictly confidential. You may contact EAP directly by calling 202-693-8888.

**NOTICE OF RIGHTS:**
You have a right to file a grievance under DPR Chapter 771, Administrative Grievance System, dated October 1, 2008. You must present the grievance directly under the formal procedure within ten (10) workdays of your receipt of this action. A formal grievance must: (1) be in writing; (2) contain sufficient detail to clearly identify the matter being grieved; and (3) specify the personal relief being requested. Your grievance must be filed with:

<div align="center">

John K. Moran
Deputy Assistant Secretary
Veterans' Employment and Training Services
200 Constitution Ave., NW
Room S 1325
Washington, DC 20210

</div>

Confidential Agency Document
DLB-001626

MSHA0085

4

The time limit for filing a grievance may be extended for good cause by mutual agreement between you and Mr. Moran.

If you believe this action was taken in reprisal for whistleblowing, you may raise the matter by filing a complaint with the Office of Special Counsel. The Office of Special Counsel will investigate your complaint and will either file an action on your behalf or notify you of your right to file an Individual Right of Action appeal to the MSPB. A complaint may be filed electronically at www.osc.gov, or may be filed in writing by filling out Form OSC-11, and faxing or mailing the completed form to the Office of Special Counsel at the following address or fax number:

<div align="center">

Complaint Examining Unit
Office of Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505
Fax: 202-254-3711

</div>

If you feel that you have been discriminated against because of race, religion, color, age, sex, national origin, or disability, you may file an equal employment opportunity (EEO) complaint with the U.S. Department of Labor. If you file an EEO complaint with the U.S. Department of Labor, you should submit it to the Civil Rights Center, Room N-4123, 200 Constitution Avenue, N.W., Washington, DC 20212.

You have the right to be represented by an attorney or other representative of your choice so long as there is no conflict of interest to the agency. However, you must designate your choice of representative in writing to Mr. Moran. Any choice must include your representative's name, address, and phone number.

You are entitled to a reasonable amount of duty time to prepare and present a grievance if otherwise in a duty status. You must request and receive approval from your immediate supervisor for the use of duty time for this purpose.

If there is anything in this notice that you do not understand or if you have a question about the process used, please contact Ms. Donna Kramer, Supervisory Human Resources Specialist, at 202-693-7686.

**U.S. Department of Labor**     Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



APR 0 9 2013

MEMORANDUM FOR DANIEL R. PETROLE
                          Deputy Inspector General

FROM:                JOSEPH A. MAIN
                          Assistant Secretary of Labor for
                          Mine Safety and Health

SUBJECT:          Response to Disciplinary or Administrative Actions

This is in response to your request of April 2, 2013 related to the Mine Safety and
Health Administration's (MSHA) disciplinary or administrative action related to MSHA's
Internal Review following the Upper Big Branch (UBB) Mine Accident. MSHA has
administered disciplinary action related to the UBB accident.

If you need additional information please contact Deputy Assistant Secretary
Patricia W. Silvey at 202-693-9642.

Confidential Agency Document
DLB-001628
MSHA0087

**U.S. Department of Labor**      Office of Inspector General
Washington, D.C. 20210



APR - 2 2013

MEMORANDUM FOR:      JOSEPH A. MAIN
Assistant Secretary of Labor for
Mine Safety and Health

*Daniel R. Petrole*

FROM:      DANIEL R. PETROLE
Deputy Inspector General

SUBJECT:      Disciplinary or Administrative Actions related to MSHA's Internal
Review following the Upper Big Branch Mine Accident.

In June of 2012, I requested that MSHA inform the OIG as to whether or not any disciplinary or
administrative actions would be taken as a result of the March 06, 2012, internal review
following the Upper Big Branch mine accident. We have not received any information related to
this request. Please provide an official response by April 10, 2013.

Please contact me or Nancy Ruiz-de-Gamboa, Assistant Inspector General for Management and
Policy, at (202) 693-5100 if you have any questions.

cc: Patricia W. Silvey, Deputy Assistant Secretary for Operations, MSHA

*Working for America's Workforce*

Confidential Agency Document
DLB-001629      MSHA0088

**U.S. Department of Labor**       Office of Inspector General
                                    Washington, D.C. 20210



JUN ¬18 2012

MEMORANDUM FOR PATRICIA W. SILVEY
                    Deputy Assistant Secretary for Operations
                    Mine Safety and Health Administration

                    *Daniel R. Petrole*

FROM:               DANIEL R. PETROLE
                    Deputy Inspector General

SUBJECT:            Disciplinary or Administrative Actions related to MSHA's Internal
                    Review following the Upper Big Branch Mine Accident

In early April, you referred the MSHA internal review report released on March 06, 2012 to
OASAM and SOL to evaluate whether any disciplinary or administrative actions are warranted
given the findings contained in the report. Once you have received their recommendations, I am
requesting that you inform the OIG whether or not MSHA will be taking any disciplinary or
administrative action.

Please contact me or Nancy Ruiz-de-Gamboa at (202) 693-5100 if you have any questions.

cc: Joseph A. Main, Assistant Secretary of Labor for Mine Safety and Health

*Working for America's Workforce*

Confidential Agency Document
DLB-001630                                              MSHA0089

**U.S. Department of Labor**     Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



APR 03 2013

MEMORANDUM FOR LINCOLN L. SELFE, JR.
Supervisory Mine Safety and
Health Inspector

FROM:     PATRICIA W. SILVEY
Deputy Assistant Secretary for Operations

SUBJECT:     Decision Letter

By letter dated December 5, 2012, Ernest Cameron, Director, Administration and Management, proposed to suspend you from pay and duty status for seven (7) calendar days from your position of Supervisory Mine Safety and Health Inspector[1], GS-1822-14, in the District 4 Office in Mount Hope, WV, of the Mine Safety and Health Administration (MSHA).

On December 20, 2012, you presented me with your oral reply to the proposed suspension. Also in attendance at the oral reply were Executive Assistant Monique Molina, MSHA, and Donna Kramer, Supervisory Human Resources Specialist, Office of the Assistant Secretary for Administration and Management (OASAM).

During the oral reply you also provided your written reply. An extension was granted until January 18, 2013, to allow you to supplement your written reply, if you so desired. On January 17, 2013, you submitted an e-mail containing additional information for my consideration.

I have considered the oral and written replies that you presented to me as well as the proposed suspension issued to you by Mr. Cameron and all supporting documentation. This decision is taken to promote the efficiency of the Federal Service and is based on your failure to carry out your official duties.

---

[1] This position is referred to as Assistant District Manager.
You can now file your MSHA forms online at www.MSHA.gov. It's easy, it's fast, and it saves you money!

Confidential Agency Document
DLB-001631     MSHA0090

2

## Discussion on Decision to Suspend

Specification 1 of the proposed suspension concerned your failure to provide adequate management oversight by ensuring that inspectors and supervisors under your supervision reviewed potentially flagrant violations in accordance with the procedures established by Procedure Instruction Letter (PIL) No. I08-III-02.

During your oral reply and in your written reply, you noted that of the two types of flagrant violations, inspectors only had difficulty with the repeated failure criterion. You also stated that at the time of the Upper Big Branch (UBB) mine explosion there was not any mechanism available to assist an inspector in determining whether or not a cited violation was a repeat violation other than the inspector's or his or her supervisor's memory.

Both of your replies also reference the issue as being nationwide in scope and your belief that you should not be disciplined for a national problem.

Although I have considered your comments, for the purpose of this decision letter, I am focused on your actions regarding lack of adequate management oversight over the review of potentially flagrant violations in accordance with the provisions of the PIL.

As stated in the proposed suspension, one of the key responsibilities of your position is to evaluate the results of policy implementation within your area of enforcement responsibility. The Mt. Hope Field Office inspectors issued eight section 104(d)(2) orders for violations at UBB that met the "numbered objective criteria" in PIL No. I08-III-02 for review as potentially flagrant violations. The eight violations were not reviewed as potentially flagrant violations by inspectors or supervisors.

During your interview with the Internal Review (IR) team, you demonstrated a comprehensive understanding of MSHA procedures regarding flagrant violations. Nevertheless, you personally reviewed three of the eight violations at UBB that met the "numbered objective criteria" outlined in PIL I08-III-02 and did not recognize them as potentially flagrant. Therefore, I find that this specification is supported by the evidence.

Specification 2 of the proposed suspension concerned your failure to provide necessary management oversight to ensure that Right of Entry (ROE) trainees in the Mt. Hope Field Office did not conduct inspection activities apart from Authorized Representatives (ARs).

In your oral and written replies you stated you did not have any knowledge that ROE trainees were conducting inspection activities apart from ARs. You

3

also stated that you had no reason to believe or question that the directives you had issued regarding when an ROE trainee could be apart from the AR were not being followed. You asserted that had you known these actions were occurring you would have taken disciplinary action against those who had failed to follow your directives.

Although the IR team determined that for portions of five of the six regular inspections at UBB, ROE trainees did conduct inspection activities apart from ARs, I cannot find any evidence that indicates you were aware of these occurrences. As such, I am removing this specification.

Specification 3 of the proposed suspension cites your failure to effectively use established Agency tools to identify and correct errors on the part of your subordinate inspectors and supervisors regarding Accompanied Activities (AAs) and Field Activity Reviews (FARs). This specification also references supervisors' lack of documentation of required information on many AA and FAR forms such as correct event activity codes, dates of the Uniform Mine File reviews, dates when inspectors were debriefed, and, in some cases, supervisors not accompanying inspectors on all aspects of an inspection or investigation. Your failure to identify apparent deficiencies in two second level reviews you conducted was also cited.

Your written response identified an error in Specification 3. The Coal Mine Safety and Health Supervisor's Handbook requires a supervisor to accompany an inspector during all aspects of a mine visit, not all aspects of an inspection or investigation as stated in Specification 3.

In the oral and written replies, you did not dispute the fact that Mt. Hope Field Office supervisors did not conduct (or document) several required AAs and FARs. You indicated that the oversights occurred because there were acting supervisors in the Mt. Hope Field Office between May and December 2009. You also stated there was no training on conducting AAs, FARs, and second level reviews provided to acting supervisors, supervisors, and assistant district managers until after the UBB internal review.

You asserted that you had identified issues with AAs during your second level reviews and addressed the issues with your subordinate supervisors. Finally, you stated that Specification 3 inappropriately holds you accountable for deficiencies in AAs and FARs that you did not review and were not required to review.

After reviewing this specification and your replies, I am removing this specification. Thus, I am sustaining one (1) of the three (3) specifications in the proposed seven (7) day suspension issued to you.

MSHA0092

4

**Penalty Selection**
In reaching my decision to an appropriate penalty, I have considered the factors established by Merit System Protections Board (MSPB) case Douglas v. VA, 5 MSPB 313 (1981).

I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. As a management official you are tasked with setting a positive example for subordinate employees. You were and still are assigned to review the work of the management and inspection personnel under your jurisdiction. If you are unable to enforce agency policies and follow National Office directives, Inspectors may be held to a lower standard of quality work which could jeopardize the safety of the miners MSHA is tasked with protecting.

A CMS&H Assistant District Manager is a prominent position. You are responsible for the quality and quantity of work produced by your subordinates while ensuring agency policies are adhered to. Additionally, you are recognized by mine operators, miners, miners' representatives, and MSHA as having an in-depth knowledge of the Federal Mine Safety and Health Act of 1977, as amended by the Mine Improvement and New Emergency Response Act of 2006.

Your responses to the IR team relative to Specification 1 indicated that you were aware of the criteria in PIL No. I08-III-02 for reviewing violations as potentially flagrant. Although, as you indicated in both your oral and written replies, there may be other districts in violation of the Agency policies and directives, you did not acknowledge responsibility for your role in implementing the flagrant violation procedures in your enforcement division. Your statements that every other ADM in the country needs to be disciplined since you are being disciplined and MSHA is using the IR report as a "gotcha" does not indicate your acknowledgement that you could have carried out your official duties better. If other districts have deficiencies, you are responsible for District 4 and must be held accountable.

In reaching my decision, I have considered your "Highly Effective" performance ratings for Fiscal Years (FY) 2010 and 2011, the lack of any prior disciplinary action in your personnel file, and your approximate 30 years of federal service. I have also considered your years of dedicated service on the MSHA mine rescue team.

It is my belief that you will not commit these same or similar infractions in the future. I am confident that you can be successful in carrying out all of

MSHA0093

your upcoming official duties. Your dedication to MSHA and all miners during your career is appreciated.

However, these mitigating factors do not outweigh the seriousness of your actions. I have determined that a one (1) calendar day suspension will promote the efficiency of the service and is the least action I can take to correct your unacceptable conduct.

Your one day suspension will take place on April 9, 2013, during which time you will be in a non-pay status. Paid leave may not be used to offset the loss of pay resulting from suspension. A Standard Form 50, Notification of Personnel Action, will be accessible via your electronic Official Personnel Folder (eOPF).

You will officially return to a duty status on April 10, 2013. You will continue in your current position, grade, and salary pending the effective date of this action. Upon request, you may use accrued leave that is properly scheduled and approved before and after the effective date of this action.

**NOTICE OF RIGHTS**
You have a right to file a grievance under DPR Chapter 771, Administrative Grievance System, dated October 1, 2008. You must present the grievance directly under the formal procedure within ten (10) workdays of your receipt of this action. A formal grievance must: (1) be in writing; (2) contain sufficient detail to clearly identify the matter being grieved; and (3) specify the personal relief being requested. Your grievance must be filed with:

John K. Moran
Deputy Assistant Secretary
Veterans' Employment and Training Services
200 Constitution Avenue, NW
Room S 1325
Washington, DC 20210

The time limit for filing a grievance may be extended for good cause by mutual agreement between you and Mr. Moran.

If you believe this action was taken in reprisal for whistleblowing, you may raise the matter by filing a complaint with the Office of Special Counsel. The Office of Special Counsel will investigate your complaint and will either file an action on your behalf or notify you of your right to file an Individual Right of Action appeal to the MSPB. A complaint may be filed electronically at www.osc.gov, or may be filed in writing by filling out Form OSC-11, and

MSHA0094

mailing or faxing the completed form to the Office of Special Counsel at the following address or fax number:

Complaint Examining Unit
Office of Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505
Fax: 202-254-3711.

If you feel that you have been discriminated against because of race, religion, color, age, sex, national origin, or disability, you may file an equal employment opportunity (EEO) complaint with the U.S. Department of Labor. If you file an EEO complaint with the U.S. Department of Labor, you should submit it to the Civil Rights Center, Room N-4123, 200 Constitution Avenue, NW, Washington, DC 20212.

You have the right to be represented by an attorney or other representative of your choice so long as there is no conflict of interest to the agency. However, you must designate your choice of representative in writing to Mr. Moran. Any choice must include your representative's name, address, and phone number.

You are entitled to a reasonable amount of duty time to prepare and present a grievance if otherwise in a duty status. You must request and receive approval from your immediate supervisor for the use of duty time for this purpose.

If there is anything in this notice that you do not understand or if you have a question about the process used, please contact Ms. Donna Kramer, Supervisory Human Resources Specialist, at 202-693-7686.

If you believe that your actions are due to personal problems, I would like to remind you of the Department's Employee Assistance Program (EAP). The EAP is designed to provide counseling and assistance to any employee who is experiencing personal problems of any kind, and its services are strictly confidential. You may contact EAP directly by calling 202-693-8888.

**U.S. Department of Labor**

Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, Virginia 22209-3939



NOV 2 9 2012

MEMORANDUM FOR KEVIN G. STRICKLIN
                         Administrator
                         Coal Mine Safety and Health

FROM:           PATRICIA W. SILVEY
                         Deputy Assistant Secretary for Operations
                         Mine Safety and Health

SUBJECT:           Letter of Counseling

This is to notify you of my concern regarding your management responsibilities as they relate to the duties of your position. The duties of the Administrator for Coal Mine Safety and Health (CMS&H) require you to exercise management control and direction of all programs authorized by the Federal Mine Safety and Health Act of 1977 to ensure the safety and health of the nation's coal miners. However, your oversight and control of all CMS&H programs has not been as effective as it should be.

The issues relating to this matter were raised to my attention when I read the report on the "Internal Review of MSHA's Actions at the Upper Big Branch Mine – South." The Internal Review (IR) evaluated MSHA's performance prior to the April 10, 2010, explosion at the Upper Big Branch Mine. Accordingly, since I have recently become aware of your actions via the IR report, I am now addressing your conduct through this Letter of Counseling.

The IR report revealed that you relied heavily on acting Deputy Administrator Charles Thomas to provide leadership and direction to the District staff in the planning, development, execution, and administration of policies and programs designed to prevent injury, disease, and death in the coal mining industry.

You were unaware of issues that required your experience and attention even though you had regular briefings with Mr. Thomas and the District 4 staff. Specifically, you were unaware that District 4 failed to provide the necessary oversight to ensure that the "too wet to sample" rock dust survey computer application was used in the Mt. Hope and Princeton field offices; that District 4 failed to provide adequate oversight to ensure that inspectors reviewed potentially flagrant violations in accordance with Procedure Instruction Letter, No. I08-III-02; and that the District 4 Roof Control Department was not following CMS&H Memo No. HQ-08-058-A when reviewing and approving complex and non-typical roof control plans and amendments. In addition, you did not appreciate that Headquarters memos, which were not incorporated into the centralized Agency directives system, were not being distributed to all appropriate employees.

Confidential Agency Document
DLB-001637

2

I have concerns with your conduct, as described above. Therefore, I must take corrective measures to address this conduct. I am directing you, as an employee under my direct supervision, to complete the following tasks prior to April 30, 2013.

- Ensure that corrective actions to address IR recommendations related to: (1) enforcement of 30 CFR 75.400 and 30 CFR 75.403; (2) review of potentially flagrant violations; and (3) review and approval of complex and non-typical roof control plans and amendments are effectively and timely implemented.

- Work with the Director of the Office of Assessments, Accountability, Special Enforcement, and Investigations to develop a means for evaluating the effectiveness of corrective actions prescribed in the UBB Internal Review report.

- Ensure that new and revised inspection policies and procedures are implemented through the established MSHA Directives System.

I believe timely completion of the tasks above, in addition to this memorandum, will ensure appropriate future conduct.

You are requested to sign and date this memorandum as evidence that you received it. Your signature does not mean you agree with the contents of this memorandum. Your failure to sign will not void the contents of this memorandum.

I acknowledge receipt of this memorandum as indicated below:

KEVIN G. STRICKLIN                          11/29/12
**PRINT NAME**          **SIGNATURE**          **DATE**

**U.S. Department of Labor**          Mine Safety and Health Administration
                                      1100 Wilson Boulevard
                                      Arlington, Virginia 22209-3939



APR **0 3 2013**

MEMORANDUM FOR DONALD WINSTON
                      Supervisory Mine Safety and
                      Health Specialist

FROM:          PATRICIA W. SILVEY
                      Deputy Assistant Secretary for Operations

SUBJECT:          Decision Letter

By letter dated December 5, 2012, Ernest Cameron, Director, Administration
and Management, proposed to suspend you from pay and duty status for
seven (7) calendar days from your position of Supervisory Mine Safety and
Health Specialist, GS-1822-13, in the Mount Hope, WV District 4 Office, of
the Mine Safety and Health Administration (MSHA).

On December 20, 2012, you presented me with your oral reply to the
proposed suspension. Also in attendance at the oral reply were Executive
Assistant Monique Molina, MSHA, and Donna Kramer, Supervisory Human
Resources Specialist, Office of the Assistant Secretary for Administration and
Management (OASAM).

During the oral reply I granted an extension for submission of any written
reply until January 18, 2013. On January 7, 2013, you submitted your
written reply.

I have considered the oral and written replies that you presented to me as
well as the proposed suspension issued to you by Mr. Cameron and all
supporting documentation. This decision is taken to promote the efficiency
of the Federal Service and is based on your failure to carry out your official
duties.

**Discussion on Decision to Suspend**
Specification 1 of the proposed suspension concerned your failure to follow
CMS&H Memo No. HQ-08-058A, when you recommended that the District 4
Manager approve the base roof control plan submitted in October 2009 for

You can now file your MSHA forms online at www.MSHA.gov. It's easy, it's fast, and it saves you money!

Confidential Agency Document
DLB-001639                                    MSHA0098

2

Upper Big Branch (UBB), without requiring Performance Coal Company to submit a risk assessment specific to the particular mining operation, including the data and evaluation supporting the proposed roof control plan.

During your oral and written replies, you noted that CMS&H Memo No. HQ-08-058A lists four criteria to be used in determining if a roof control plan is complex and/or non-typical. The fourth criterion concerns other conditions considered unusual by the District Manager, such as retreat mining between two gob areas, mining of high stress areas created by multiple seam interaction, or active mining above or below longwall panels or isolated remnant pillars.

After reviewing this specification, I have determined that the Memo does allow District Managers to exercise discretion relative to risk assessments based upon their knowledge and experience with multiple seam mining. Given your experience with multiple seam mining and roof control, I find that you acted within the parameters of the Memo when you recommended that the District Manager approve the base roof control plan for UBB absent a risk assessment. As such, I am removing this specification.

Specification 2 of the proposed suspension concerned your failure to implement provisions of CMS&H Memo No. HQ-08-059A when you did not require District 4 Roof Control Department specialists to use the checklists specified by the memorandum when reviewing roof control plans and revisions. Instructions for all roof control personnel to begin using these checklists were e-mailed to District Managers and Assistant District Managers on January 27, 2009.

Additionally, the District 4 plan approval records for the October 2009 UBB base roof control plan did not contain the Headquarters or the District 4 checklists as required by the Memo.

In both your oral and written replies you stated that prior to CMS&H Memo No. HQ-08-059A being issued, District 4 had developed checklists to be used when reviewing roof control plans. You stated that the District 4 checklists contained a large majority of the items that the CMS&H Memo No. HQ-08-059A checklists contained and you thought the District 4 checklists were sufficient.

During your replies, you acknowledged that you continued to complete the District 4 checklists even after the Headquarters checklists were disseminated. You also affirmed that the October 2009 UBB base roof control plan file did not contain any checklist, Headquarters or District 4.

In your written reply you stated that it is your understanding that on January 27, 2009, instructions requiring roof control specialists to use the Headquarters checklists were e-mailed to District Managers and Assistant District Managers. However, you stated that the e-mail distribution did not include roof control supervisors; you did not receive the Headquarters checklists; and you were not informed that you had been using the incorrect checklists.

During the oral reply, you asserted the same position that your written reply contained regarding the checklists; that you were not on the e-mail distribution list and were not informed that you were using the incorrect checklists. However, during the oral reply, I asked you whether or not you received the Headquarters checklists. Your response was that you could not say and you were not going to lie to me. If you received the checklists, it would have been from Assistant District Manager Richard Kline.[1] You continued to state that you could only tell me that you were not aware of the Headquarters checklists.

Based on the information shared during the oral reply, I find that this specification is supported by the evidence. Thus, I am sustaining one (1) of the two (2) specifications in the proposed seven (7) day suspension issued to you.

### Penalty Selection
In reaching my decision as to an appropriate penalty, I have considered the factors established by Merit System Protections Board (MSPB) case Douglas v. VA, 5 MSPB 313 (1981).

I considered the nature and seriousness of your actions. Failing to carry out your official duties is one of the most serious infractions that can be committed. As a management official you are tasked with setting a positive example for subordinate employees. You were and still are assigned to review the work of the specialists under your supervision. If you are unable to enforce agency policies and follow National Office directives, the inspectorate may be held to a lower standard of quality work which could jeopardize the safety of the miners MSHA is tasked with protecting.

A Supervisory CMS&H Specialist is a prominent position. You are recognized by the mine operators, miners, miners' representatives, and MSHA as having an in-depth knowledge of the Federal Mine Safety and Health Act of 1977, as amended by the Mine Improvement and New Emergency Response Act of 2006. You are also recognized by the Office of the Solicitor (SOL) as an

---

[1] Assistant District Manager Kline has retired.

expert on roof control as they have utilized your expertise on several legal cases in which MSHA received favorable settlements.

As a Supervisory CMS&H Specialist you are responsible for the quality and quantity of work produced by your subordinates while ensuring agency policies are adhered to. Although the Internal Review team concluded that the District 4 checklists for reviewing roof control plans were adequate to ensure the plans submitted by Performance Coal Company included the required information, you were unable to explain why neither checklist was present in the October 2009 UBB base roof control plan file.

Regardless of what happened to the checklist for the October 2009 UBB base roof control plan, I find that you failed to exercise due diligence in implementing the checklists in CMS&H Memo No. HQ-08-059A.

In reaching my decision, I have also considered your "Highly Effective" performance ratings for Fiscal Years (FY) 2009, 2010, and 2011, the lack of any prior disciplinary action in your personnel file, and your 20 years of federal service.

It is my belief that you will not commit these same or similar infractions in the future. I am confident that you can be successful in carrying out all of your upcoming official duties and appreciate the dedication that you have shown to MSHA.

However, these mitigating factors do not outweigh the seriousness of your actions. I have determined that a one (1) calendar day suspension will promote the efficiency of the service and is the least action I can take to address your unacceptable conduct.

Your one day suspension will take place on April 9, 2013, during which time you will be in a non-pay status. Paid leave may not be used to offset the loss of pay resulting from suspension. A Standard Form 50, Notification of Personnel Action, will be accessible via your electronic Official Personnel Folder (eOPF).

You will officially return to a duty status on April 10, 2013. You will continue in your current position, grade, and salary pending the effective date of this action. Upon request, you may use accrued leave that is properly scheduled and approved before and after the effective date of this action.

**NOTICE OF RIGHTS**
You have a right to file a grievance under DPR Chapter 771, Administrative Grievance System, dated October 1, 2008. You must present the grievance

MSHA0101

5

directly under the formal procedure within ten (10) workdays of your receipt of this action. A formal grievance must: (1) be in writing; (2) contain sufficient detail to clearly identify the matter being grieved; and (3) specify the personal relief being requested. Your grievance must be filed with:

John K. Moran
Deputy Assistant Secretary
Veterans' Employment and Training Services
200 Constitution Avenue, NW
Room S 1325
Washington, DC 20210

The time limit for filing a grievance may be extended for good cause by mutual agreement between you and Mr. Moran.

If you believe this action was taken in reprisal for whistleblowing, you may raise the matter by filing a complaint with the Office of Special Counsel. The Office of Special Counsel will investigate your complaint and will either file an action on your behalf or notify you of your right to file an Individual Right of Action appeal to the MSPB. A complaint may be filed electronically at www.osc.gov, or may be filed in writing by filling out Form OSC-11, and mailing or faxing the completed form to the Office of Special Counsel at the following address or fax number:

Complaint Examining Unit
Office of Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505
Fax: 202-254-3711.

If you feel that you have been discriminated against because of race, religion, color, age, sex, national origin, or disability, you may file an equal employment opportunity (EEO) complaint with the U.S. Department of Labor. If you file an EEO complaint with the U.S. Department of Labor, you should submit it to the Civil Rights Center, Room N-4123, 200 Constitution Avenue, NW, Washington, DC 20212.

You have the right to be represented by an attorney or other representative of your choice so long as there is no conflict of interest to the agency. However, you must designate your choice of representative in writing to Mr. Moran. Any choice must include your representative's name, address, and phone number.

Confidential Agency Document
DLB-001643

MSHA0102

6

You are entitled to a reasonable amount of duty time to prepare and present a grievance if otherwise in a duty status. You must request and receive approval from your immediate supervisor for the use of duty time for this purpose.

If there is anything in this notice that you do not understand or if you have a question about the process used, please contact Ms. Donna Kramer, Supervisory Human Resources Specialist, at 202-693-7686.

If you believe that your actions are due to personal problems, I would like to remind you of the Department's Employee Assistance Program (EAP). The EAP is designed to provide counseling and assistance to any employee who is experiencing personal problems of any kind, and its services are strictly confidential. You may contact EAP directly by calling 202-693-8888.